**Larry WHITFORD, Plaintiff–Appellant,**

v.

**Captain BOGLINO, et al.,
Defendants–Appellees.**

No. 93–2660.

United States Court of Appeals,
Seventh Circuit.

Submitted June 29, 1995.*

Decided Aug. 4, 1995.

Rehearing Denied Aug. 30, 1995.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record.

Larry Whitford, pro se.

Brian F. Barov, Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, Thomas S. Gray, Office of Atty. Gen., Springfield, IL, Agather McKeel, Asst. Atty. Gen., Office of Atty. Gen., East St. Louis, IL, for defendants-appellees.

Before CUMMINGS, COFFEY and ROVNER, Circuit Judges.

PER CURIAM.

Larry Whitford brought suit under 42 U.S.C. § 1983 against several officers of the Illinois Department of Corrections alleging a number of violations of his due process rights in a prison disciplinary proceeding. In 1989, when Whitford was an inmate at the Shawnee Correctional Center,[1] an adjustment committee composed of defendants Boglino, Chaney, and Green convicted him of assault[2] and sentenced him to six months of segregation, six months of loss of good time credits, demotion to C grade for six months, and transfer to a maximum security institution.[3] Whitford has consistently maintained his innocence; he contends that he witnessed a fight between two other inmates (Gardner and Wilson) but did not participate in any way. Gardner and Wilson signed affidavits stating that Whitford was not involved in the fight. Whitford sued the members of the disciplinary committee, the investigating offi-

---

1. Whitford is currently incarcerated at the Centralia Correctional Center.

2. Assault is defined as "[c]ausing a person or an object to come into contact with another person in an offensive, provocative or injurious manner, or fighting with a weapon." 20 Ill.Admin.Code ch. 1 § 504 (Table A).

3. Whitford later earned back the good time credits.

cers, and their supervisors, claiming that the defendants violated his due process rights by not conducting an impartial investigation, not considering Gardner and Wilson's affidavits, failing to provide him with an impartial adjustment committee, and not providing a sufficient explanation of the basis for his conviction. The district court granted summary judgment to the defendants. Whitford appeals, disputing the merits of the district court's decision. Whitford also argues that the court erred by allowing the defendants to submit successive motions for summary judgment.

## I. Successive Summary Judgment Motions

On the defendants' first motion for summary judgment, the district court granted the motion as to some of the defendants but denied it as to others. At a later point in the proceedings, the defendants filed another summary judgment motion offering a new legal theory and arguing that summary judgment should be granted to the remaining defendants. The district court granted this motion. Whitford argues that the denial of summary judgment to some of the defendants on the first motion precluded them from filing a later motion for summary judgment. We believe, however, that the court had the discretion to accept the renewed motion.

■■■ The doctrine of res judicata bars parties or their privies from relitigating a final judgment on the merits where the issues were or could have been raised in the first action. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir.1994). The denial of summary judgment is not a final judgment; rather, it is an interlocutory order. *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir.1991); *Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629, 632 (7th Cir.1984). Thus, the denial of summary judgment has no res judicata effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist.

*Kirby v. P.R. Mallory & Co., Inc.*, 489 F.2d 904, 913 (7th Cir.1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *Fernandez v. Bankers National Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir.1990); *see also Enlow v. Tishomingo County, Mississippi*, 962 F.2d 501, 507 (5th Cir.1992); James W. Moore, *et al.*, Moore's Federal Practice ¶ 56.20[2] (2d ed. 1994). A renewed or successive summary judgment motion is appropriate especially if one of the following grounds exists: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or prevent manifest injustice." *Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part, rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

■■■ In the instant case, the district court apparently allowed the defendants to submit a second summary judgment motion because they presented a new and (in the eyes of the district court) more convincing legal argument. Although it is desirable for defendants to present their strongest arguments in their initial summary judgment motion, the trial judge, in the exercise of his discretion, saw fit to receive the revised summary judgment motion. The district court did not abuse its discretion by allowing the defendants to submit a successive motion for summary judgment. *Cf. Kirby*, 489 F.2d at 913; *Enlow*, 962 F.2d at 507 n. 16 ("In fact, the district court may reconsider a previously denied summary judgment motion even in the absence of new material presented."); *Fernandez*, 906 F.2d at 569.

## II. Liability of Supervisory Officials

■■■ Whitford alleges that defendants McGinnis (director of the Illinois Department of Corrections), Sandahl (then-warden of the Shawnee Correctional Center), and Welborn (then-warden of the Menard Correctional Center) are liable for failing to oversee and correct the alleged violations of their subordinates. To state a claim under § 1983, however, Whitford must allege that McGinnis, Sandahl, and Welborn were personally in-

volved in the deprivation of his due process rights. *Rascon v. Hardiman*, 803 F.2d 269, 273–74 (7th Cir.1986). Whitford does not argue that McGinnis, Sandahl, or Welborn ordered, had knowledge of, or consented to the alleged violations. Thus, we agree that the district court's grant of summary judgment to McGinnis, Sandahl, and Welborn was proper.

## III. Prehearing Investigation

Whitford argues that Groaning violated his due process rights during the prehearing investigation by failing to submit the exculpatory affidavits to the committee. Illinois administrative regulations require an investigating officer to submit exculpatory evidence "of a convincing nature" to the adjustment committee. 20 Ill.Admin.Code. ch. 1 § 504.60(e). Whitford presented the affidavits to Groaning, and he argues that Groaning's failure to submit them to the committee, in violation § 504.60(e), constituted a deprivation of his due process rights.

The Supreme Court has held that state administrative regulations create federally enforceable liberty interests if they contain "mandatory language" and "specific substantive predicates." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1909–10, 104 L.Ed.2d 506 (1989); *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). However, in the recent case of *Sandin v. Conner*, ― U.S. ―, 115 S.Ct. 2293, 132 L.Ed.2d 418 (U.S.1995), the Court stated that state prison regulations will create federally enforceable liberty interests in limited situations only. In *Sandin*, the Court noted that most prison regulations are not intended to create liberty interests. *Sandin*, ― U.S. at ―—―, 115 S.Ct. at 2298–99, *Thompson* and *Hewitt*, however, "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* In addition, the *Thompson* and *Hewitt* method discouraged states from adopting prison regulations, because they could "avoid [the] creation of 'liberty' interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel." *Id.* at ―, 115 S.Ct. at 2299.

Consequently, the *Sandin* Court held that state prison regulations will not ordinarily create federally enforceable liberty interests.[4] The Court realized, however, that certain states have in the past granted certain rights to inmates in limited circumstances. For instance, a state may possibly relieve inmates from severe disciplinary actions until such time as they have been convicted of an offense. Thus, the *Sandin* Court held that states may still create liberty interests through prison regulations, "[b]ut these [liberty] interests will be generally limited to freedom from restraint which ... imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, ― U.S. at ―, 115 S.Ct. at 2300.[5]

Groaning's failure to submit the affidavits to the committee did not, in and of itself, cause any "significant hardship" to be imposed on Whitford, so the adoption of § 504.60(e) by the state of Illinois does not rise to the level of creating a liberty interest. Even if Whitford had a right, enforceable in state court under § 504.60(e), to have the

---

4. The Court noted that its holding may be limited to the context of prison regulations. *Sandin*, ― U.S. at ―—―, 115 S.Ct. at 2298–99. In addition, *Sandin* does not apply to pretrial detainees, who may not be punished without due process of law regardless of state regulations. *Id.* at ―—―, 115 S.Ct. at 2300–01; *see Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979).

5. A state may create a liberty interest even if no protected interest exists under the Due Process Clause alone. *See Sandin*, ― U.S. ―—―, 115 S.Ct. at 2299–2300. To establish a liberty interest independent of state regulations, a pris-

oner must show that the infringement of his liberty exceeds the expected scope of his sentence. *See id.; Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (inmate entitled to due process protections before involuntary transfer to mental hospital because such transfer "is not within the expected range of conditions of confinement to which a prison sentence subjects an individual"); *see also Washington v. Harper*, 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036–37, 108 L.Ed.2d 178 (1990) (prisoner has liberty interest under Due Process Clause "in avoiding the unwanted administration of antipsychotic drugs").

investigating officer submit the affidavits to the committee, Groaning's alleged violation of the regulation did not affect Whitford's ultimate conviction. Section 504.60(e) is a procedural regulation that governs the conduct of the investigating officer. If Whitford believed that the committee should consider the affidavits, he retained the right to submit them himself, which he did. Thus, Whitford cannot claim that the violation of § 504.60(e) prevented him from presenting a defense or otherwise caused him to be improperly convicted. Groaning's actions did not cause Whitford to lose freedom from restraint or place a significant hardship on him. Thus, under *Sandin,* § 504.60(e) does not grant Whitford a federally enforceable liberty interest.

■ In addition, Whitford may not claim that Groaning's failure to submit the affidavits was an independent violation of his federal due process rights. Whitford has no federal due process right to a prehearing investigation, *see Smith v. Farley,* 858 F.Supp. 806, 810 (N.D.Ind.1993), *aff'd sub nom., Smith v. Parke,* 56 F.3d 67 (7th Cir. 1995) (table); *United States ex rel. Wilson v. DeRobertis,* 508 F.Supp. 360, 362 (N.D.Ill. 1981), much less a right to have the investigating officer submit affidavits to the committee. Thus, Groaning's failure to submit the affidavits to the committee did not violate Whitford's federal due process rights.

## IV. The Disciplinary Hearing

Whitford argues that his disciplinary hearing was not conducted in a manner consistent with due process. Before evaluating his individual claims, we will initially discuss whether, under *Sandin,* federal due process protections apply to Whitford's disciplinary hearing.

■ The penalty suffered by Whitford as a result of his conviction was six months of segregation, six months of loss of good time credits (the credits were later earned back), and transfer to a maximum security institution.[6] *Sandin* recognizes the possibility that a prisoner may possess a liberty interest in

freedom from punishment that "will inevitably affect the duration of his sentence." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2302. The loss of good time credits would affect the duration of Whitford's sentence. However, he later earned them back, rendering any suit concerning the loss of good time credits moot.

■ Next, Whitford's transfer to a maximum security institution did not implicate his federal due process rights. A prisoner has no due process right to be housed in any particular facility. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, ... [because] [t]he conviction has sufficiently extinguished the defendant's liberty interest to empower the state to confine him in *any* of its prisons." *Id.* (emphasis in original). Similarly, a transfer to another prison, even to one with a more restrictive environment, is not a further deprivation of an inmate's liberty under the Due Process Clause itself because the prisoner could have been initially placed in a more restrictive institution, so a transfer does not fall outside the expected scope of the sentence. *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum,* 427 U.S. at 224–25, 96 S.Ct. at 2538–39; *Ramirez v. Turner,* 991 F.2d 351, 353 (7th Cir.1993); *Miller v. Henman,* 804 F.2d 421, 423 (7th Cir.1986), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987).

■ In addition, the *Meachum* Court held that Massachusetts prison disciplinary regulations could not create a due process right to a pretransfer hearing, because prisoners may be transferred even without having been convicted of a disciplinary violation. *Meachum,* 427 U.S. at 226–27, 96 S.Ct. at 2539–40. Because a prisoner may be transferred regardless of whether he was convicted, he may not contest his transfer on the ground that his conviction violated due process. *See id.; Montanye,* 427 U.S. at 243, 96 S.Ct. at 2547–48 (New York law did not create right to pre-transfer hearing because

---

**6.** Whitford was also demoted to C grade for six months. Prisoners demoted to C grade "receive

no privileges except yard and commissary." 20 Ill.Admin.Code ch. 1 § 504.130(a)(3).

disciplinary conviction not necessary for transfer). We do not understand the situation to be any different in Illinois. *See Harris v. McDonald,* 737 F.2d 662, 665 (7th Cir.1984) (Illinois regulation requiring pre-transfer hearing lacks substantive predicates and thus creates no federally enforceable liberty interest).

Therefore, if Whitford's federal due process claim may proceed, it must arise from his placement in disciplinary segregation.[7] The *Sandin* Court held that the Due Process Clause itself was not implicated by Conner's sentence of 30 days' disciplinary segregation. The Court noted that punishing an inmate by placing him in segregation will not always trigger due process protections, because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Whitford received six months of segregation, which is a more severe penalty than that suffered by Conner. We have previously held that federal due process protections must be followed before a term of one year in segregation may be imposed, because such a penalty falls outside the expected scope of an inmate's sentence. *Rowe v. DeBruyn,* 17 F.3d 1047, 1053 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994). However, the *Sandin* Court's observation that punishment for disciplinary violations is within the expected scope of a prison sentence calls *Rowe*'s reasoning into question. Moreover, even if prisoners are entitled to due process protections before extreme terms of segregation may be imposed, Whitford's sentence of six months was not such an extreme term.

Still, Whitford may have a state-created liberty interest in freedom from disciplinary segregation. We have held that Illinois prison disciplinary regulations (Ill.Admin.Code §§ 504.10 to 504.150) grant inmates a feder-

ally enforceable liberty interest in not being sentenced to disciplinary segregation without at least minimal due process. *Gilbert v. Frazier,* 931 F.2d 1581, 1582 (7th Cir.1991). In *Sandin,* however, the Court held that Hawaii prison regulations did not create a federally enforceable liberty interest in remaining in the general population. *Sandin,* —— U.S. at ——–——, 115 S.Ct. at 2300–02. The Court reasoned that Conner's placement in disciplinary segregation in a Hawaii prison did not "work a major disruption in his environment," because the conditions of confinement in segregation were not significantly different from those in the general population. *Id.* at ——, 115 S.Ct. at 2301. Thus, Conner did not suffer the type of deprivation to which federal due process protections could conceivably apply. *Id.* at ——–——, 115 S.Ct. at 2300–02.

The holding in *Sandin* implies that states may grant prisoners liberty interests in being in the general population only if the conditions of confinement in segregation are significantly more restrictive than those in the general population. In the instant case, the record is not sufficiently developed for us to determine whether the conditions of Whitford's confinement were significantly altered when he was placed in segregation. Thus, before we may even consider recovery for the alleged violations of his due process rights, additional factual findings concerning the nature of Whitford's confinement in segregation and whether it caused a "major disruption in his environment" and imposed an "atypical and significant hardship" on him, *see Sandin,* —— U.S. at ——–——, 115 S.Ct. at 2299–2301, are needed. A remand for further factfinding, however, is necessary only if Whitford's claims that the adjustment committee violated his due process rights would otherwise survive summary judgment. Thus, we turn to the merits of his claims.

---

7. Whitford's demotion to C grade for six months did not implicate his federal due process rights. Generally, revocation of privileges is within the expected scope of a prison sentence. Thus, demotion to C grade for six months does not implicate the Due Process Clause itself. In addition, Whitford does not point to any Illinois regulations that supply a state-created liberty interest in freedom from demotion to C grade. *Cf. Sut-*

*ton v. Johnson,* 1993 WL 179528, * 2 (N.D.Ill. May 25, 1993) (finding no state-created liberty interest in freedom from demotion to C grade because inmate "offered no proof that prison regulations place limits on ... [prison] officials' discretion to deny commissary privileges, to issue reprimands or to demote prisoners to 'C' grade").

## 534

### A. Notice

██ Whitford alleges that Suits' failure to specifically detail the charges in his disciplinary report amounts to a violation of due process.[8] Whitford has a right to notice of the charges against him "in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The notice should include "the number of the rule violated ... and a summary of the facts underlying the charge." *Adams v. Carlson*, 375 F.Supp. 1228, 1237 (E.D.Ill.1974), *aff'd in part, rev'd in part on other grounds*, 521 F.2d 168 (7th Cir.1975). The notice prepared by Suits specifically charged Whitford with violations of disciplinary rules 102 (assault), 301 (fighting), and 206 (intimidation or threats). The report stated that Whitford was under investigation for "allegedly assaulting inmate ... Wilson in unit 3B." This description was sufficient to inform Whitford of the nature of the charge and to allow him to attempt to collect evidence for his defense. Thus, the notice was constitutionally sufficient, and the district court properly granted summary judgment to Suits.

### B. Impartiality of the Adjustment Committee

██ Whitford argues that the adjustment committee was not impartial because defendants Boglino and Groaning sat in judgment on the committee after being involved in the investigation. If an officer is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on the adjustment committee. *Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir.1983). "Tangential involvement" in the investigation, however, does not disqualify an officer from sitting on the adjustment committee. *Id.*

Whitford claims that Groaning prepared the investigation report and then sat on the adjustment committee. If true, this would constitute a violation of Whitford's due process rights. *See Merritt*, 721 F.2d at 601; *Diercks v. Durham*, 959 F.2d 710, 713 (8th

Cir.1992). The evidence is clear, however, that Groaning did not serve on the adjustment committee. Rather, the committee was composed of officers Boglino, Chaney, and Green. Thus, the district court's granting of summary judgment to Groaning on this claim was proper.

██ Next, Whitford argues that Boglino should not have served on the committee because he signed Suits' disciplinary report as the shift supervisor. Whitford does not allege, however, that Boglino was actively involved either in preparing the disciplinary report or in conducting any portion of the investigation. Simply signing a disciplinary report as shift supervisor is the type of "tangential involvement," *see Merritt*, 721 F.2d at 601, that does not mandate disqualification of Boglino from serving on the committee. *United States ex rel. Silverman v. Pennsylvania*, 527 F.Supp. 742, 749 (W.D.Pa.1981) (signing misconduct report as ranking officer on duty did not disqualify officer from serving on hearing committee), *aff'd*, 707 F.2d 1395 (3d Cir.1983), *and aff'd*, 707 F.2d 1397 (3d Cir.1983); *see also Rhodes v. Robinson*, 612 F.2d 766, 773 (3d Cir.1979) (officer who did not witness incident and was not actively involved in preparing misconduct report could serve on tribunal). Thus, the district court's decision to grant Boglino summary judgment on this claim was proper.

### C. Adjustment Committee Decision

Finally, we turn to Whitford's most substantial argument. Whitford claims that the adjustment committee (Boglino, Chaney, and Green) committed a number of errors in violation of his due process rights. Specifically, he contends that the committee (1) relied on a confidential source without providing any indication of its reliability and (2) inadequately explained its decision to convict him in light of the affidavits of inmates Gardner and Wilson that seemingly cleared him of any involvement in the fight.

The committee's explanation for its decision to convict Whitford reads in full:

> Whitford was charged with "being at the scene" of the fight, which is not itself an offense.

---

8. Rather than state that Whitford was involved in the fight, Suits' disciplinary report states that

"The investigation report # 069–SWE–89 indicates that inmate Whitford did in fact assault inmate Wilson A96266. Inmate witness statement support information investigation report, witness name withheld due [to] safety & security concerns. Refer to confidential file. Inmate Wilson did sustain serious facial injuries. The committee is reasonably satisfied the subject is guilty."

This summary does not adequately explain the reasons for the committee's decision. The summary relies on the investigation report. However, the investigation report (or at least the only investigation report present in the record) does not in any way indicate that Whitford committed the offense.[9] The only evidence noted in the summary that could possibly support the committee's conclusion is the testimony of the confidential informant. The details of the informant's testimony, however, are not provided. The summary states that the informant's testimony supports the investigation report. But this assertion does not seem to support the committee's decision to convict—if anything, the text of the only investigation report before us appears to clear Whitford of any involvement in the fight. *See* note 9, *supra.*

■ However, let us assume *arguendo* that the confidential informant's testimony was adverse to Whitford. If so, this testimony might form a sufficient basis for the conviction, as we will uphold the adjustment committee's decision if there is "any evidence in the record that could support ... [its] conclusion." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). A prison disciplinary board may rely on the testimony of confidential informants, and it may keep their identities (and information relating to their identities) secret, because "revealing the names of informants ... could lead to the death or serious injury of ... the informants." *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir.1985), (*quoting McCollum v. Miller,* 695 F.2d 1044, 1048 (7th Cir.1982)), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). In order to guarantee the inmate's right to a fair hearing, however, a prison disciplinary board must accompany the use of a confidential informant's testimony with an indication that the informant is reliable. *Id.; McCollum v. Williford,* 793 F.2d 903, 905 (7th Cir.1986). Whitford argues that the committee failed to present any indication of the informant's reliability.[10]

■ The committee could have used one of four methods to establish the reliability of the informant's testimony. The committee could have relied on either

"(1) the oath of the investigating officer as to the truth of his report containing confi-

---

**9.** Under "record of investigation," the investigation report states:

"Resident [Whitford] denies any involvement in the fight between Gardner & Wilson. The fight did occur in cell 3B63. Whitford admits to being there when the fight occurred but did not participate in the fight."

Under "results of investigation," the report states:

"Resident pleads not guilty. Admitted he saw the fight but didn't participate."

**10.** The defendants contend that Whitford has waived this argument because he did not present it to the district court. In the district court, Whitford made the general argument that the committee did not sufficiently inform him of the basis for its decision, *see, e.g.,* R. 1, Complaint ¶ 14(c), but he did not specifically mention the committee's failure to indicate the reliability of the confidential informant. While waiver rules are important to insure that judges do not "take over the function of lawyers," *Hartmann v. Prudential Ins. Co. of America,* 9 F.3d 1207, 1214

---

(7th Cir.1993), the briefs of pro se prisoners who are not skilled in legal analysis must be liberally construed. *See McNeil v. United States,* — U.S. —, —, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). Whether a pro se litigant has waived an issue must be determined on the facts of each individual case. *Bates v. Jean,* 745 F.2d 1146, 1150 (7th Cir.1984). In this case, Whitford has consistently maintained his innocence and argued that the committee inadequately informed him of the basis for its decision. The reliance on the informant's testimony was part of the basis for that decision. In addition, the defendants were aware of the confidential informant issue; in fact, they argued to the district court that the committee complied with state regulations regarding the use of confidential testimony. *See* R. 26, Memorandum in Support of Defendant's Motion for Summary Judgment at 5. Because Whitford raised the general (although perhaps not the precise) argument below and his decision to press the confidential informant issue on appeal should not have surprised the defendants, we hold that the issue has not been waived.

dential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that[ ] he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential informant." *Mendoza,* 779 F.2d at 1293 (internal citations and quotations omitted).

The committee did not offer any of these four indicia of reliability, and the defendants' failure to present any argument in their appellate brief that their use of the confidential information was consistent with due process is, in essence, an admission that they did not comply with the requirements set forth in *Mendoza. See PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1271 (7th Cir.1995) ("PepsiCo's silence on the issue in its appellate brief indicates that it concedes the point."). The explanation set forth in the summary does not satisfy the requirements of due process as stated in *Mendoza* and *McCollum.* Therefore, Whitford's claim that the committee improperly relied on the confidential informant's testimony should survive summary judgment.

■ Finally, Whitford argues that the committee violated his due process rights by failing to consider the affidavits of inmates Gardner and Wilson, which state that Whitford was not involved in the fight. During the adjustment committee hearing, Whitford submitted the exculpatory affidavits to the committee. The committee accepted the affidavits into evidence. Whitford contends that the committee failed to consider the affidavits because the summary does not refer to them in its explanation of the decision to convict him of assault.[11]

The adjustment committee may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt. *Viens v. Daniels,* 871 F.2d 1328, 1336 n. 2 (7th Cir.1989); *Smith v. Farley,* 858 F.Supp. 806, 808–09 (N.D.Ind. 1993). The committee is required to issue a written explanation of its decision in order that "a reviewing court (or agency) ... [can] determine whether the finding of guilt was ... sufficiently arbitrary so as to be a denial of the inmate's due process rights." *Chavis v. Rowe,* 643 F.2d 1281, 1287 (7th Cir.1981), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). In *Chavis,* we held that the adjustment committee failed to provide a sufficient explanation when it stated, "We recognize and consider the resident[']s statement[,] however[,] we accept the reporting officer[']s charges." *Id.* The *Chavis* court found the statement deficient because "[i]t gave no clear indication of why the reporting officer was to be believed rather than Chavis or Officer Sipp." *Id.*[12] Whitford's case is similar to *Chavis* because the adjustment committee's summary states no reasons why the committee found the confidential informant's testimony more credible than Whitford's testimony and the exculpatory affidavits. Moreover, the tribunal in *Chavis* at least acknowledged the existence of the exculpatory evidence; Whitford's committee did not even mention the affidavits. We

**11.** The district court granted summary judgment to the defendants on the ground that the committee could have refused to accept the affidavits and required that Whitford present live testimony instead, and Whitford never requested that Gardner and Wilson testify at the hearing. *Cf. Wheeler v. Sims,* 951 F.2d 796, 800–01 (7th Cir. 1992) (adjustment committee did not violate inmate's due process rights by refusing to accept his written statement at a disciplinary hearing where he refused to make an oral statement), *cert. denied,* — U.S. ——, 113 S.Ct. 320, 121 L.Ed.2d 241 (1992). Whether the committee could have refused to accept the affidavits, however, is not at issue here. The committee accepted the affidavits; it did not require Whitford to present live testimony. If the committee had

indicated that it would accept live testimony only, Whitford might have requested that Gardner and Wilson be called to testify. In deference to the committee's decision to receive the exculpatory affidavits, and in fairness to Whitford, we must presume that the affidavits were properly in evidence. Thus, the district court should not have applied *Wheeler.* Rather, the question before us is whether, after accepting affidavits containing exculpatory evidence, the committee must state its reasons for rejecting the exculpatory evidence.

**12.** Officer Sipp had submitted an earlier investigation report containing exculpatory evidence. *See id.* at 1283.

recognize that decisions of prison disciplinary committees receive highly deferential review, for "prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill,* 472 U.S. at 456, 105 S.Ct. at 2774. The adjustment committee must, however, provide a reasoned basis for its decision, *see Chavis,* 643 F.2d at 1286–87, and it simply has not done so in this case. Whitford presented exculpatory evidence to the committee, and under *Viens* and *Chavis* he is entitled to an explanation of why the committee disregarded the exculpatory evidence and refused to find it persuasive. Thus, Boglino, Chaney, and Green were not entitled to the granting of summary judgment based on the record before us on Whitford's claim that they failed to adequately consider the exculpatory affidavits.

## V. Conclusion

The district court should not have granted summary judgment to Boglino, Chaney, and Green on Whitford's claims that the adjustment committee violated his due process rights by improperly using confidential testimony and failing to adequately consider the exculpatory affidavits. Before proceeding to trial, however, the district court must initially determine whether, in light of *Sandin,* Whitford possessed a liberty interest in freedom from placement in disciplinary segregation. Thus, the confidential testimony and exculpatory evidence claims are REVERSED and REMANDED to the district court for further proceedings consistent with this opinion. The district court's decision to grant summary judgment to the defendants on the remaining claims is AFFIRMED. Circuit Rule 36 shall apply on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.