[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
On February 24, 1998, the petitioner, Canton Jolley, filed an amended complaint, which contains seven counts against the defendant, George Wezner, Warden of the Cheshire Correctional Institution. Under count one, the petitioner alleges that he received fifty four disciplinary tickets, thirteen of which resulted in him losing 585 days in good time credits, while he was incarcerated in the Somers Correctional Institution. The petitioner alleges that he did not receive the rules and regulations which governed his conduct as a prisoner therefore, the sanctions imposed against him violate his due process rights under the fourteenth amendment of the United States constitution, and that the rules were not properly promulgated under General Statutes § 18-78 subjecting him to cruel and unusual punishment thus violating his rights under the eighth amendment of the United States constitution.
As to count two, the petitioner makes similar allegations regarding the tickets he received at the MacDougall Correctional Institution. The petitioner claims he received twenty seven tickets, eight of which resulted in loss of good time credits. The petitioner claims that the imposition of these sanctions CT Page 8763 violated his due process rights under the fourteenth amendment of the United States constitution, and that the rules were not properly promulgated under General Statutes § 18-78 and subjected him to cruel and unusual punishment thus violating his rights under the eighth amendment of the United States constitution. Furthermore, under count two, the petitioner makes allegations regarding his conditions of confinement while incarcerated at MacDougall.
Under count three, the petitioner alleges that he was placed in a special housing unit without notice or a hearing and the special housing unit did not conform to the Uniform Administrative Procedures Act. Under count four, the petitioner alleges that he was not afforded due process and the respondent did not comply with the necessary procedural safeguards in regard to the disciplinary tickets the petitioner received. The petitioner also claims procedural problems occurred during the disciplinary hearings in which the respondent imposed the disciplinary sanctions against him. Under count five, the petitioner alleges that he did not receive notice regarding an administrative directive which requires him to wait five years to apply for restoration of his good time credits and the administrative directive is being applied retroactively against him.
Under count six, the petitioner makes some additional allegations regarding his conditions of confinement while incarcerated at MacDougall Correctional Institution. Under count seven, the petitioner makes allegations regarding his conditions of confinement at the Cheshire Correctional Institution.
On November 24, 1998, the respondent answered the amended complaint and admitted to the petitioner's receipt of a total of eighty eight disciplinary reports, twenty three[1] of which resulted in the forfeiture of 769 total days of statutory good time. The respondent denied the other allegations of the complaint as being incomplete, inaccurate, and/or moot. The respondent asserted three special defenses as part of his answer: 1) any complaints regarding the petitioner's conditions of confinement at the MacDougall and Cheshire Correctional Institutions are moot, since the petitioner has been incarcerated at the Garner Correctional Institution since May 6, 1998; 2) the petitioner was afforded due process in regard to the twenty three disciplinary reports which resulted in loss of statutory good time and these are the only sanctions that may be adjudicated in CT Page 8764 a habeas corpus petition; and 3) the petitioner does not have a liberty interest in the restoration of forfeited good time.
At the time of trial, the petitioner agreed to litigate only his claims related to the disciplinary reports and withdrew any and all claims regarding conditions of confinement without prejudice. (Trial Transcript [Tr.], p. 34, November 25, 1998.) Accordingly, only counts one, two and four are at issue.
 DISCUSSION
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established. . . ."Vincenzo v. Warden, 26 Conn. App. 132, 137-38, 599 A.2d 31
(1991).
General Statutes § 18-7a(c) provides, in pertinent part: "Any person sentenced to a term of imprisonment for an offense committed on and after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and twelve days for each month served, and pro rata for a part of a month for the sixth and each subsequent year of a sentence of more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee. In the event a prisoner has not yet earned sufficient good time to satisfy the good time loss, such lost good time shall be deducted from any good time earned in the future by such prisoner."
"[P]risoners have a constitutionally protected liberty interest in statutorily created good time credits, of which they can be deprived only if appropriate due process requirements are met. . . ." (Citations omitted.) McCarthy v. Warden,
CT Page 8765213 Conn. 289, 299, A.2d (1989).
"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. . . ." (Citations omitted; internal quotation marks omitted.)Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 444,455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).
The petitioner alleges that he never received notice of the rules, regulations and penalties associated with the disciplinary tickets he received for which he lost good time credits as a penalty. The petitioner alleges that he was denied due process since he never knew the sanctions that could be levied against him due to his violations. In opposition, the respondent contends that the petitioner knew or should have known the disciplinary rules and penalties, especially after he received his first ticket. The respondent contends that the disciplinary reports enumerate the violations that are subject to sanctions on the second page of the disciplinary report. Also, the respondent contends that the disciplinary reports, Exhibit A, were signed by the petitioner and demonstrate that the petitioner knew of the violations, and the Inmate Request to Staff Member dated May 3, 1989, Exhibit I, demonstrates that the petitioner was referred to the inmate handbook in response to his request for a television. Also, the respondent indicates that the petitioner received four disciplinary reports prior to the issuance of the first disciplinary report that resulted in loss of good time credits.
In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963,41 L.Ed.2d 935 (1974), the Supreme Court found that when an inmate is charged with a rules violation that could lead to the loss of good time credits, at least the minimum requirements of procedural due process appropriate for the circumstances must be observed. As applied in Whitford v. Boglino, 63 F.3d 527 (7th Cir. 1995), a prisoner "has a right to notice of the charges against him in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. . . . The notice CT Page 8766 should include the number of the rule violated and a summary of the facts underlying the charge. . . ." (Citations omitted; internal quotation marks omitted.) Id., 534. Wolff v. McDonnell
also provides that the notice be "a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action. . . ." (Citation omitted.) Wolff v.McDonnell, supra, 418 U.S. 564. Furthermore, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense. . . ." Id., 565.
The twenty three disciplinary reports in which the petitioner lost good time credit were submitted as Respondent's Exhibit A. The disciplinary reports provide the following facts. In each of the four disciplinary reports in which the petitioner pleaded not guilty, a correctional officer certified that the petitioner was given notice of the charges and the date of the hearing two to three days in advance. The petitioner chose to have an advocate in three of the disciplinary hearings. Each of the disciplinary reports provides information concerning the date of the offense, a statement of charges, a report detailing the investigation, a section specifying what sanctions were imposed and a basis for finding the petitioner guilty. The petitioner pleaded guilty to the remaining nineteen disciplinary reports at issue. These disciplinary reports were submitted in a different format but contained the same information as the first four disciplinary reports including the delivery of advance notice to the petitioner. The petitioner signed each of the disciplinary reports where in he entered a plea of guilty. Also, attached to each of the disciplinary reports is notice of good time forfeited, which further explains that the petitioner could apply for restoration of good time after a six month period. The disciplinary reports demonstrate that the petitioner had an opportunity for a hearing including an option to have assistance from an advocate and to call witnesses. The petitioner admits to receiving the disciplinary reports and does not contest the content or basis of the disciplinary reports themselves. (Tr., pp. 82-86, November 25, 1998.) The court finds upon review of the disciplinary reports and applying the due process standard inWolff and Superintendent, the petitioner was afforded due process in regard to the disciplinary reports at issue which resulted in the forfeiture of good time credits. The court further finds the disciplinary reports demonstrate some evidence to support the revocation of the petitioner's 765 days of good time credit and thus, are in accord with due process. CT Page 8767
The petitioner alleges that he did not know of the penalties associated with the charges therefore, he was not afforded due process. The petitioner cites McMillan v. Healey, 739 F. Sup. 153
(S.D.N.Y. 1990), to support his complaint. In McMillan, the plaintiff, an inmate in a New York correctional facility, brought an action pursuant to 42 U.S.C. § 1983 alleging that a correctional officer violated his right to due process. The plaintiff was found guilty of charges which resulted in ten days of confinement in a special housing unit. The plaintiff alleged that the defendant knew or should have known that he did not have the authority to impose such a sanction. The defendant moved for dismissal citing New York law which clearly gave him such authority. In opposition to the defendant's motion to dismiss, the plaintiff acknowledged the defendant's authority, but argued that his due process rights were violated because the defendant did not follow New York law which prohibited the imposition of punishment for a violation of a rule or regulation in which he was not provided a copy thereof. The court found that failure to follow state procedures does not by itself deprive an inmate of due process. Id., 155. Furthermore, the court held that notice of the exact range of sanctions prior to commission of the infraction is not required, however once the inmate has been charged with a violation, notice of the penalty is necessary prior to the disciplinary hearing. Id., 157.
In the present case, the petitioner received disciplinary reports prior to the twenty three disciplinary reports in question. (Respondent's Exhibits E and F.) The format of the prior disciplinary reports is the same as the first four disciplinary reports in which the petitioner lost good time credit. Section V of these disciplinary reports, "Disposition of Charges by Disciplinary Committee," subsection C, "Good Time Loss Recommended," indicates whether the disciplinary committee decided to recommend any forfeiture of good time credits in regard to the violations. These disciplinary reports also indicate that the petitioner received a copy of the report and the petitioner does not contest receipt of the disciplinary reports or a copy thereof. Based upon the disciplinary reports and the petitioner's receipt of the prior disciplinary reports, the court finds that the petitioner had notice that loss of good time was at least a possible penalty in regard to the disciplinary violations listed on the disciplinary reports themselves.
The respondent brought forth witnesses who testified in CT Page 8768 regard to the department of correction's policy of providing copies of the rules, regulations, and sanctions upon an inmate's entry into a correctional facility such as Somers and MacDougall. (Tr., pp. 61-136, December 3, 1998; Tr., pp. 2-58, December 10, 1998.) Also, the respondent's witnesses testified that the rules, regulations, and sanctions were readily available to inmates upon request. The petitioner brought witnesses to rebut the testimony regarding the distribution and availability of the rules and sanctions. (Tr., pp. 2-115, December 22, 1998.) These witnesses and the petitioner testified that they did not receive copies of the Code of Penal Discipline. However, the disciplinary reports involving the petitioner, submitted in Respondent's Exhibits E and F, demonstrate that the petitioner did know that the violations listed on the disciplinary report could potentially lead to loss of good time. Furthermore, the petitioner's efforts in regard to the advocacy of this petition on his own behalf along with his ability to bring actions before the federal district court and the second circuit demonstrate that the petitioner possesses some degree of knowledge of the system of jurisprudence and advocacy. See Jolley v. Robuski, No. 95-2378 (2d Cir., 1996) (U.S. App. Lexis 2504).
The ruling in McMillan v. Healey has not been widely used and goes beyond the minimum requirements set forth in Wolff v.McDonnell. In general New York courts have conflicting views in regard to loss of good time: "The district courts in this circuit have disagreed over whether the loss of good time as a result of a disciplinary hearing implicates a liberty interest. . . ." (Citation omitted.) Marino v. Klages, 973 F. Sup. 275, 279
(N.D.N.Y. 1997). The disciplinary reports which resulted in the forfeiture of the petitioner's good time credits comply with the minimum requirements set forth in Wolff v. McDonnell. Even under the holding in McMillan, the petitioner had reasonable notice that the violations set forth in the disciplinary reports could potentially result in loss of good time credits.
The petitioner further claims that the rules that he violated as set forth in the disciplinary reports were not properly promulgated under General Statutes § 18-78a. General Statutes §18-78a provides, in pertinent part: "(a)(1) The provisions of chapter 54 shall apply to the Department of Correction, except that in adopting regulations in regard to riot control procedures, security and emergency procedures, disciplinary action or classification the Department of Correction shall not be required to follow the procedures in sections 4-168, 4-168a, CT Page 87694-168b, 4-172, 4-173, 4-174 and4-176. . . . (4) Any regulation, as defined in section4-166, concerning riot control, security and emergency procedures, disciplinary action, classification or out-of-state transfers which was adopted by the Department of Correction prior to October 1, 1997, and which is otherwise valid except that such regulation was not adopted in accordance with chapter 54, is validated, and shall be deemed to have been adopted in compliance with chapter 54."
In Craig v. Warden, Superior Court, judicial district of Tolland at Rockville, Docket No. 058627 (March 17, 1998, Zarella,J.), the court dismissed a prisoner's action which sought a declaratory judgment and alleged that several of the department of correction's administrative directives, including 9.5, Code of Penal Discipline, were unenforceable due to the department of correction's failure to comply with the Uniform Administrative Procedures Act (UAPA). The court found that Administrative Directive 9.5 concerns disciplinary action. Id. The court took judicial notice of the General Statutes § 18-78a and found that the statute validated the promulgation of the administrate directives in question including 9.5. Id. See also, Beasley v.Commissioner of Correction, 50 Conn. App. 421, 718 A.2d 487, cert. granted on other grounds, 247 Conn. 949 (1998) (the Appellate Court found that the department of correction's administrative directives were within the exceptions to the UAPA under General Statutes § 18-78a). In the present case, the petitioner alleges that the administrative directives used against him were not properly promulgated in accord with the UAPA. The disciplinary tickets at issue involve violations and penalties in accord with Administrative Directive 9.5. (Respondent's Exhibit A and Exhibit H.) As the court found inCraig v. Warden, this court finds that Administrative Directive 9.5 primarily deals with disciplinary action, therefore it is within the exceptions set forth in § 18-78a and the petitioner's claim alleging noncompliance with § 18-78a is without merit.
Petition is denied.
Frank S. Meadow Judge Trial Referee