**Ricky OUTLAW, Petitioner–Appellant,**

v.

**Rondle ANDERSON, Respondent–Appellee.**

No. 01–2805.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 1, 2002.*

Decided Feb. 4, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2).

Before COFFEY, MANION, and WILLIAMS, Circuit Judges.

### ORDER

Ricky Outlaw, an Indiana state prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that he was denied due process of law in a prison disciplinary proceeding. The district court denied Outlaw's petition, and we affirm.

### Background

On the morning of January 10, 2000, one of Outlaw's fellow prisoners reported to correctional staff that Outlaw had assaulted him. The prisoner, whose last name was Wade, was wet and explained to the officers that Outlaw had thrown hot liquid on him. According to the conduct report prepared by one of the officers, the videotape from a prison surveillance camera showed "a physical altercation" between Outlaw and Wade. Later that day, Outlaw received written notice that he had been charged with "fighting" in violation of prison disciplinary rule B–212 and that the prison's Conduct Adjustment Board (or "CAB") would hold a hearing on the charge. Outlaw pleaded not guilty and requested the surveillance tape, as reflected in a screening report prepared by the hearing officer.

At the hearing Outlaw did not deny fighting with Wade but asserted that he was merely defending himself. To corroborate his version of the incident, Outlaw submitted statements from two prisoners who witnessed the fight. These witnesses stated that the scuffle ensued after Wade unexpectedly grabbed Outlaw as Outlaw was walking by him. The hearing officer who viewed the surveillance tape, however, saw otherwise and reported to the CAB that Outlaw grabbed Wade first. Based on all of this evidence, the CAB found Outlaw guilty. In the hearing report, the CAB stated that the "[t]ape clearly shows Outlaw grab Wade first" and thus the "[w]itnesses appeared to have lied." Indeed, witness William Humbles was charged with a disciplinary infraction for lying at Outlaw's hearing, but was later found not guilty after the videotape was reviewed.

Outlaw then appealed, arguing that the CAB's not-guilty decision in Humbles' case called into question the guilty finding in his case. The final reviewing authority of the Indiana Department of Corrections granted him a rehearing before a new CAB panel. Outlaw was provided written notice of the new hearing. As in the earlier notice, this second notice stated that he was charged with violating Rule B–212, but this time the notice characterized the offense as "battery" instead of "fighting." At this hearing, the CAB viewed the tape and again found that it showed Outlaw grabbing Wade before the physical altercation ensued. Outlaw was never permitted to view the tape. The CAB therefore found Outlaw guilty and sanctioned him with 10 days in disciplinary segregation and a demotion in credit-earning class. Outlaw appealed without success and then sought federal habeas relief.

### Analysis

On appeal Outlaw argues that the district court should have granted him re-

lief because the CAB violated his due process rights in two ways: (1) by failing to provide him with sufficient notice of the charges against him; and (2) by refusing to allow him to view the surveillance tape upon which the CAB based its decision. Indiana prisoners possess a liberty interest in good-time credits, and Indiana therefore must afford due possess before reducing a prisoner's credit-earning class. *Montgomery v. Anderson,* 262 F.3d 641, 645 (7th Cir.2001). In prison disciplinary proceedings, due process mandates that prisoners receive certain minimal procedural safeguards, which include advance notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence, and a written statement of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In addition, the CAB's decision must be supported by "some evidence." *Id.* at 455–56.

█ The purpose of the advance written notice requirement is "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense." *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We have therefore held that this notice generally should include the number of the rule violated and a brief summary of the facts underlying the charge. *Whitford v. Boglino,* 63 F.3d 527, 534 (7th Cir.1995). Here, despite some discrepancy in the notices' characterizations of the offense ("battery" as opposed to "fighting"), both notices identified the same disciplinary rule, Rule B–212. Moreover, with both notices came a copy of the conduct report that described the facts underlying the charge including the date, time, and place of the alleged altercation with Wade. This description was sufficient to inform Outlaw of the na-ture of the charge against him and to allow him to prepare a defense. *Id.* Indeed, Outlaw did just that, collecting statements from witnesses to corroborate his claim that Wade started the fight by grabbing him first. Thus, the second CAB notice satisfied due process.

█ Outlaw's next due process claim regarding the CAB's refusal to permit him to view the surveillance tape is also unavailing. If the CAB considered the potentially exculpatory evidence, due process does not mandate that the CAB permit the *prisoner* to view it as well. *See White v. Indiana Parole Bd.,* 266 F.3d 759, 768 (7th Cir. 2001). That is particularly so, where, as here, disclosure of the evidence to the prisoner may jeopardize prison security. *Id.* Like the prisoner in *White,* Outlaw contends that lack of access to the videotape prevented him from presenting evidence favorable to his case. *See Wolff,* 418 U.S. at 566. But the CAB "had the tape, so it knew whatever evidence favorable to [Outlaw] the tape contained." *White,* 266 F.3d at 768. The CAB found the tape inculpatory; "but even if it was exculpatory it was before the Board." *Id.* The record contains "some evidence" supporting the guilty finding, and therefore Outlaw's petition for habeas corpus was properly denied.

AFFIRMED