**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1884
_____

JACKIE MARTIN JAMES, JR.,
                                             Appellant

v.

KARA N. TEMPLETON
_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court No. 3-19-cv-00270)

District Judge: Honorable Susan E. Schwab

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 4, 2024
_____

Before: SHWARTZ, RENDELL, AMBRO, *Circuit Judges*.

(Filed: March 11, 2024)

_____

O P I N I O N[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*.

Plaintiff-Appellant Jackie James, Jr., appeals from a summary judgment order of the District Court ruling that he received procedural due process in a post-deprivation hearing following the revocation of his Commercial Driver's License ("CDL"). James argues (1) that the District Court erred where it permitted the defendant, Kara Templeton, to file a second motion for summary judgment after dismissing the first motion without prejudice; and (2) that he did not receive due process through the post-deprivation hearing. We will affirm the District Court's order.

I

In December 2016, James was issued a CDL by the Pennsylvania Department of Transportation ("PennDOT") after passing a skills test administered by Luzerne County Community College. About eight months after James earned his CDL, a third-party audit uncovered improprieties at the testing facility. Specifically, some tests were found to have been truncated or not given at all, while others involved testing more than one person at a time in violation of testing procedures. Due to concerns about the validity of these skills tests, PennDOT required 177 affected drivers to retest as a matter of highway safety.

Because James's test scores "met the pattern" identified by PennDOT regarding the testing improprieties (i.e., "it looked like [the examiner] was just going through the motions and checking boxes"), he was included in the group of drivers required to retest. Appx. 96. PennDOT offered these drivers several accommodations, including fee waivers, offering tests at convenient times, and access to testing vehicles for any driver

2

who needed one. Despite multiple communications from PennDOT advising James that he needed to retake the skills test to keep his CDL, he refused, resulting in a license downgrade seven months after PennDOT shared its initial notice.

James filed a petition in January 2019 appealing from the downgrade. *James v. Dep't of Transp.*, 243 A.3d 273, 275 (Pa. Commw. Ct. 2020). His appeal acted as a supersedeas, meaning he maintained his CDL while his appeal was pending. After holding an evidentiary hearing in April 2019, the Court of Common Pleas affirmed PennDOT's determination to downgrade James's license, finding that the retesting requirement was "a step in the right direction" towards remedying a "potentially dangerous situation" affecting an issue "of paramount importance" – the safe operation of commercial vehicles in Pennsylvania. *James v. Dep't of Transp.*, No. 79 of 2019 (Pa. Ct. Com. Pl. Luzerne Cnty. Apr. 26, 2019); Appx. 231. The Commonwealth Court affirmed the Court of Common Pleas' ruling in October 2020. *James v. Dep't of Transp.*, 243 A.3d 273 (Pa. Commw. Ct. 2020).

Following the Commonwealth Court's ruling, James filed a complaint in the District Court, arguing that PennDOT had downgraded his license without affording him procedural due process. At the conclusion of discovery, Defendant Kara Templeton, PennDOT's Director for the Bureau of Driver Licensing, moved for summary judgment, which the Court denied without prejudice due to "deficient" briefing. *James v. Templeton*, No. 3:19-CV-00270, 2022 WL 428174, at *8 (M.D. Pa. Feb. 11, 2022). The Court noted that neither party addressed the fact that James was able to use his CDL while his appeal was pending, and directed the parties to address in any subsequent

summary judgment motion whether this fact might impact whether he was afforded due process. *Id.* Templeton filed a second motion for summary judgment and clarified that James's appeal served as a supersedeas, allowing him to retain his CDL while the appeal was pending. James did not dispute that he exercised his right to appeal and that this appeal acted as a supersedeas.

The District Court granted Templeton's second summary judgment motion, finding that James received due process under the balancing test adopted in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *James v. Templeton*, No. 3:19-cv-00270, 2023 WL 2504758, at \*9 (M.D. Pa. Mar. 14, 2023). Specifically, the Court found that, although James had a property interest in his CDL designation and employability as a CDL driver, he had (and took) the opportunity to appeal the downgrade of his license to the Court of Common Pleas, during which he "had an evidentiary hearing with the opportunity to present evidence, to present witnesses, and to cross-examine witnesses." *Id.* Further, because James was able to keep his CDL designation while his appeal to the Court of Common Pleas was pending, the District Court found "little risk of an erroneous deprivation, and no reason to believe that additional safeguards would have provided any additional value." *Id.* Finding the Government's interest to be "compelling," the District Court concluded that the balancing test weighed in favor of Templeton and granted her motion for summary judgment. *Id.* James timely appealed.

## II[1]

We review a district court's rulings on matters of docket control and docket management for an abuse of discretion. *In re Fine Paper Antitrust Litig*., 685 F.2d 810, 817 (3d Cir. 1982). We exercise plenary review of an award of summary judgment, applying the same standard as the district court. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues as to any material fact. Fed. R. Civ. P. 56(c).

## III

James raises two arguments related to the District Court's management of its docket: first, that it erred when it extended the dispositive motions deadline sua sponte; and second, that it erred in allowing Templeton to file a second motion for summary judgment. Neither argument has persuasive merit.

We have recognized that "matters of docket control . . . are committed to the sound discretion of the district court." *In re Fine Paper Antitrust Litig*., 685 F.2d at 817. "We will not interfere with a trial court's control of its docket 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" *Id*. (quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972)). Federal Rule of Civil Procedure 16(b)(4) also permits the modification of a scheduling order "for good cause and with the judge's consent." Fed. R.

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

Civ. P. 16(b)(4). Specifically, a district court has the authority to permit a second summary judgment motion "if good reasons exist." *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

We find that good reasons existed here, as the District Court dismissed the first motion for summary judgment without prejudice after finding the initial briefings "deficient" in addressing the main question of due process. *Templeton*, 2023 WL 2504758, at *8. Further, there is no requirement of a formal motion to modify a scheduling order. The Court's decision to permit a second summary judgment motion and extend the dispositive motions deadline *sua sponte* was well within its discretion. As James has not clearly demonstrated "actual and substantial" prejudice from the second summary judgment motion—he had and took the second opportunity to oppose summary judgment—we will not interfere with the District Court's ruling. *In re Fine Paper Antitrust Litig.*, 685 F.2d at 817.

IV

Separately, James urges that his due process rights were violated because he did not receive a pre-deprivation hearing before his CDL was downgraded. However, a review of the *Mathews* factors makes clear that the District Court did not err in ruling that the post-deprivation hearing, combined with the supersedeas, provided sufficient due process here.

The District Court properly applied *Mathews* in this case. "To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the

6

procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 (3d Cir. 2013) (citing *Mathews*, 424 U.S. at 335). In weighing these factors, a post-deprivation hearing may satisfy due process in limited circumstances, such as where an emergency requires "quick action by the State."[2] *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008).

Here, the Court of Common Pleas determined that the testing improprieties constituted a "potentially dangerous situation" affecting "an issue of paramount importance." *James v. Dep't of Transp.*, No. 79 of 2019 (Pa. Ct. Com. Pl. Luzerne Cnty. Apr. 26, 2019). Further, because James kept his CDL designation while his appeal to the Court of Common Pleas was pending,[3] the District Court found "little risk of an

---

[2] Specifically, in cases involving driver's license suspensions, the Supreme Court has determined that due process does not automatically require a pre-suspension evidentiary hearing. *See, e.g., Dixon v. Love*, 431 U.S. 105, 106 (1977) (holding that a hearing held after license suspension or revocation was sufficient); *Mackey v. Montrym*, 443 U.S. 1, 19 (1979) (holding a "prompt postsuspension hearing" satisfied due process where a driver's license had been suspended).

[3] James urges that because Templeton sent him a physical, non-commercial driver's license, and he is only allowed one valid driver's license under 75 Pa.C.S. Section 1501(c), the supersedeas could not actually serve to protect against erroneous deprivation. Br. of Appellant 18-19. James did not raise this argument to the District Court and has forfeited it here. Even so, Templeton did not need to "reissue" James's CDL. *See* 75 Pa.C.S. Section 1550(b)(1)(i) (providing that "filing and service of a petition for appeal from a suspension or revocation *shall operate as a supersedeas* until final determination of the matter by the court vested with the jurisdiction of such appeals") (emphasis added). The District Court was correct to include the supersedeas in its *Mathews* analysis.

7

erroneous deprivation, and no reason to believe that additional safeguards would have provided any additional value." *Templeton*, 2023 WL 2504758, at *9. We agree.

V

In light of the above, we will affirm the District Court's order.