**Henry J. GORDON, Plaintiff–Appellant,**

v.

**Ann M. VENEMAN, Secretary, U.S. Department of Agriculture, Defendant–Appellee.**

No. 02–2072.

United States Court of Appeals, Seventh Circuit.

Argued March 4, 2003.

Decided March 21, 2003.

Before BAUER, EVANS, and WILLIAMS, Circuit Judges.

ORDER

Henry Gordon, an African American suffering from dyslexia and fibromyalgia, sued the U.S. Department of Agriculture (USDA) for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and section 505 of the Rehabilitation Act, 29 U.S.C. § 794. The USDA filed successive motions for summary judgment on each of Gordon's claims. The district court granted the first summary judgment motion, which addressed Gordon's claims of race, sex, and disability discrimination. After additional proceedings, the court granted the second summary judgment motion, which addressed Gordon's remaining claim of retaliation. Gordon appeals, and we affirm.

Gordon, a USDA meat and poultry inspector, was assigned to work at the Peck Meat Packing Plant in Milwaukee, Wisconsin beginning in 1988. From 1990 to 1992, Gordon occasionally complained to the USDA that he was being harassed both by Peck employees and USDA veterinarians who supervised him on-site. During these years, he reported several incidents of ver-

bal abuse and physical violence. His complaint included these specific allegations:

- Co-workers made derogatory comments based on his race and his dyslexia;
- Peck employees repeatedly left water in his boots;
- On one occasion, someone put 15 to 20 cockroaches in his duffle bag;
- A Peck foreman pointed a rifle at him;
- Another Peck foreman threw a meat hook at him;
- A plant employee punched him in the face and called him a "white man's nigger."

In September 1992, shortly after the punching incident, Gordon requested and received a transfer to a different plant, the Maple Leaf Duck Farm in Franksville, Wisconsin. But things did not get better, as Gordon alleged that he continued to experience discrimination based on his race and disability at the new plant. He cited further incidents of harassment:

- An on-site veterinarian, who said he hated Gordon, caused electric fans to blow, knowing this would aggravate his fibromyalgia;
- The same veterinarian challenged Gordon's claims that he was dyslexic and ordered him to spell out names in order to prove his condition;
- A female plant employee placed duck feces on Gordon's apron, causing him to contract ringworm;
- A female USDA inspector walked in on Gordon while he was changing clothes and later made sexual comments about him.

In September 1992 Gordon filed a complaint with the EEOC alleging discrimination based on his race and dyslexia. He filed another complaint in August 1994, alleging discrimination based on sex, as well as race and disability, and retaliation

for the filing of his EEOC complaint. The complaints were consolidated, and an ALJ found that Gordon had failed to prove discrimination.

Gordon then filed suit in district court, alleging a hostile work environment based on racial and sexual harassment, failure to accommodate his dyslexia, and retaliation based on his EEOC complaint. In granting summary judgment for the USDA on Gordon's race and sex discrimination claims, the court concluded that many of the incidents he complained of were not actionable because they occurred outside the statute of limitations and the remaining incidents were insufficiently severe or pervasive to support a harassment case. The court also granted summary judgment on Gordon's disability discrimination claim because Gordon was not a "qualified individual with a disability" under the Rehabilitation Act. The court said little about Gordon's retaliation claim except to note that the USDA had not addressed it, and thus it survived.

The court, however, allowed the USDA to file a second motion for summary judgment addressing the retaliation claim. In granting this second motion, the court concluded that Gordon had not suffered an "adverse employment action" and that the allegedly retaliatory conduct was merely a continuation of the conduct underlying his discrimination complaints, not a "ratcheting up" of harassment.

On appeal Gordon renews his argument that it was improper for the court to allow the USDA to file a second motion for summary judgment. According to Gordon, nothing prevented the USDA from addressing his retaliation claims in its first motion for summary judgment, and the USDA should not have been allowed an opportunity to remedy its oversight. We limit our review of a court's decision to permit a second or successive summary

judgment motion to the highly deferential abuse of discretion standard. *See Ullmo v. Gilmour Academy*, 273 F.3d 671, 681 (6th Cir.2001); *FDIC v. Kooyomjian*, 220 F.3d 10, 16 (1st Cir.2000); *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995); *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 507 (5th Cir.1992).

This case presents the question whether a district court may permit a second summary judgment motion when a party neglects to address all of the non-movant's claims in its first motion. We conclude that such a decision is wholly within the court's discretion. In *Whitford*, we acknowledged three specific grounds for allowing a renewed or successive summary judgment motion: 1) when the controlling law has changed; 2) when new evidence has been discovered; and 3) when allowing such a motion would be necessary to correct a clear error or prevent a manifest injustice. 63 F.3d at 530. But this list was not meant to be exhaustive. *See id.* ("A renewed or successive summary judgment motion is appropriate *especially* if one of the [three] following grounds exists ....") (emphasis added). We also noted more generally that such a decision is within the court's authority "if good reasons exist." *Whitford*, 63 F.3d at 530.

Permitting a second summary judgment motion is essentially a decision concerning case management, and district court judges are in the best position to make such decisions. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir.2002); *see also Jackson v. Finnegan*, 101 F.3d 145, 152–53 (D.C.Cir.1996) (court has broad discretion to grant or deny leave to supplement motion for summary judgment); *Prudhomme v. Tenneco Oil, Co.*, 955 F.2d 390, 392 (5th Cir.1992) (court has broad discretion to grant out-of-time motions to file supplemental or amended pleadings). The judge in Gordon's case concluded that it was better to allow a second summary judg-

ment motion than risk wasting judicial resources on a claim that should never have made it to trial. This certainly suffices as a "good reason" under *Whitford*. 63 F.3d at 530. To hold otherwise would undermine the well-established principle that district courts have broad discretion to manage their own dockets.

Gordon argues that, even if the court properly allowed the second summary judgment motion, it erred in granting the motion. Specifically, he challenges the court's finding that the harassment he experienced did not worsen after he began filing complaints. Apart from being undeveloped, Gordon's argument fails because he has presented no direct evidence of retaliation, and—for the purposes of establishing a *prima facie* case—he has not identified similarly situated individuals who were treated more favorably than he was. *See Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir.2002).

AFFIRMED