In the

# United States Court of Appeals
### For the Seventh Circuit

No. 12-1710

JOHN E. TAYLOR, JR.,

*Plaintiff-Appellant,*

*v.*

JAMES BROWN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 11-cv-631-GPM — **G. Patrick Murphy**, *Judge.*

ARGUED DECEMBER 4, 2014 — DECIDED JUNE 2, 2014

Before BAUER, RIPPLE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* John Taylor, an Illinois prisoner, filed suit against several prison officials alleging various civil-rights violations, but his complaint included misjoined claims, one of which was a failure-to-protect claim against Officer James Brown. A magistrate judge issued a show-cause order indicating that he was inclined to sever the claims but that Taylor could avoid a severance order—and a second filing fee—if he dismissed one of the misjoined

claims voluntarily. Taylor reluctantly accepted the court's advice and drafted a response voluntarily dismissing his claim against Officer Brown. Two days before the judge's deadline, Taylor gave the document to a prison librarian to be e-filed. The court clerk never received it, however, and the judge severed the claim against Officer Brown, opened a new case, and assessed a second filing fee.

Both Taylor and the officer subsequently argued that Taylor's voluntary dismissal was timely under the prison mailbox rule, but the court never addressed the issue. That was a mistake. Taylor's voluntary dismissal motion was indeed timely under the prison mailbox rule, so the court should not have severed the claim or imposed a second filing fee.

## I. Background

On February 7, 2011, Taylor filed a pro se complaint seeking relief under 42 U.S.C. § 1983 against several employees of the Menard Correctional Center in southern Illinois where he was incarcerated. Taylor didn't formally differentiate his various allegations against the defendants, but the district judge tasked with screening the complaint under 28 U.S.C. § 1915A discerned five distinct claims. The judge dismissed three of the claims as legally or factually inadequate, but two survived: Count 1 alleged medical indifference on the part of several prison officials (primarily for failing to supply Taylor with needed medication), and Count 3 alleged that Officer Brown failed to protect Taylor from an assault by his cellmate. The suit was docketed as case number 11-cv-104-JPG (the "104 Case"), and Taylor was approved to proceed *in*

*forma pauperis* ("IFP"), meaning he could pay the $350 filing fee in installments. *See* 28 U.S.C. §§ 1914(a), 1915.

A magistrate judge reviewed the complaint and on June 29 issued an order to show cause stating that he was inclined to sever Counts 1 and 3 because they involved different events and defendants. *See* FED. R. CIV. P. 20(a)(2)(B) (Multiple defendants may be joined in one action only if "any question of law or fact common to all defendants will arise in the action."); FED. R. CIV. P. 21 ("On motion or on its own, … [t]he court may … sever any claim against a party."). The order informed Taylor that a second filing fee would be assessed if the claims were severed, but also explained that he could avoid the fee if he voluntarily dismissed either count by July 13.

On July 6 the defendants expressed their support for either a severance or the voluntary dismissal of either count and agreed that they "would suffer no plain legal prejudice as a result of an order permitting [a] voluntary dismissal."

Taylor drafted a response to the show-cause order in early July. In it he accepted the court's suggestion that he voluntarily dismiss one of the counts, saying that he "reluctantly will <u>dismiss</u> Count III, even though the [p]laintiff in his limited knowledge of the [l]aw believes that Count III … should be included in the complaint." He added, "[f]or another filing fee to be levied upon the [p]laintiff it would be a miscarriage of justice" and "an overwhelming financial burden," and "[t]herefore, under duress, the [p]laintiff will dismiss Count III."

By this time, however, Taylor had been transferred from Menard to the Stateville Correctional Center. Stateville had

recently instituted a policy requiring prisoners' court documents to be digitally scanned and e-filed by prison librarians. On July 11 Taylor gave his response to a Stateville law library paralegal named Ms. Winters. Taylor told her that it was due July 13, and she assured him that it would be e-filed before then. It wasn't. Whether Winters forgot or there was a technical glitch (she later claimed another staff member watched her upload it), the document Taylor gave her on July 11 never found its way to the court clerk. It was, however, mailed in hard-copy form to defense counsel, who received it on July 19.

Having received no word from Taylor by the July 13 deadline, the magistrate judge severed Counts 1 and 3 under Rule 21 on July 22.[1] The clerk redocketed Count 3 as 3:11-cv-00631-GPM ("the 631 Case"), and Taylor was ordered to pay the $350 filing fee immediately or apply to proceed IFP.

When Taylor was informed of the severance in late July, he became concerned that the court had not received his response to the show-cause order. He asked Winters to refile the document with a note indicating that it was a repeat filing. The court clerk docketed the uploaded response in the 104 Case on August 4.

On August 18 Officer Brown, as the only defendant in the 631 Case (the original Count 3), moved to dismiss. His primary argument was that because Taylor had "attempted to agree to dismiss Count 3 of [p]laintiff's [c]omplaint in [the 104 Case] by the [c]ourt's deadline and before the [c]ourt

---

[1] The 104 Case (that is, Count 1) was later resolved in March 2013 on the defendants' motion for summary judgment.

directed the [c]lerk to open the instant case," his response to the order to show cause was timely under the prison mail-box rule.[2] Officer Brown asked the court to allow Taylor, even now, to voluntarily dismiss the claim as he had tried to do in his July 11 response.[3]

Taylor responded on August 24 and explained that he had no control over when his motion for a voluntary dismissal was filed after he gave it to the prison paralegal. He "ask[ed] that the [c]ourt not penalize the [p]laintiff for the [m]otions arriving beyond the deadline date to respond to the Show Cause Motion." Rather, because he "voluntarily request[ed] the [c]ourt to dismiss Count III that no further charges be [assessed] to the [p]laintiff's account," he "pray[ed] that the [c]ourt will dismiss the Count III without prejudice."

On August 29 Taylor again asked the court to "consider[] that the [p]laintiff had absolutely no control of the Motion to

---

[2] Officer Brown's motion to dismiss was the first clear indication to Taylor that his July 11 response had not been properly filed. Taylor wrote to the court clerk on September 11 and to the magistrate judge on September 19 seeking to confirm whether any documents had been filed on his behalf in the 104 Case in July 2011. On October 18 the court confirmed that nothing had been filed for him during that month.

[3] In the interest of completeness, we note that the next docket entry after Officer Brown's motion to dismiss was an order from the court on August 23, 2011, reiterating that Taylor must pay the $350 filing fee immediately or request to proceed IFP, and that failure to do so would result in the dismissal of the case with prejudice.

Dismiss being electronically sent to the [c]ourt"[4] and "rule favorably on the Motion to Dismiss."

The district judge denied Officer Brown's motion to dismiss on September 12. The judge did not acknowledge the officer's argument about the prison mailbox rule or refer to any of Taylor's subsequent motions urging the court to accept his response to the show-cause order as timely filed. The court's order was skeletal, but the judge seems to have been under the misapprehension that Taylor had agreed to the severance and wanted to pursue his claim against Officer Brown. And so despite the wishes of both parties, the second suit continued.

Taylor never paid the filing fee for the 631 Case, nor did he request to proceed IFP. Accordingly, on September 22 the district judge dismissed the 631 Case with prejudice under Rule 41(b) for failure to comply with a court order. FED. R. CIV. P. 41(b). The judge also sua sponte ordered Taylor to pay Officer Brown's litigation costs. *See* FED. R. CIV. P. 54(d)(1) (allowing for the prevailing party's costs—other than attorney's fees—to be reimbursed by the nonprevailing party).

On September 30 and October 26, 2011, Taylor filed nearly identical postjudgment motions detailing his attempts to file his response to the order to show cause and asking the court, again, to permit him to voluntarily dismiss his claim against Officer Brown. The first motion did not cite any procedural rule, but the court construed it as a motion to

---

[4] We think Taylor's reference here to the "Motion to Dismiss" was meant to refer to his response to the show-cause order, in which he moved for voluntary dismissal of his claim against Officer Brown.

alter or amend the judgment under Rule 59(e). *See* FED. R. CIV. P. 59(e) (requiring motions to alter or amend a judgment to be filed within 28 days of the judgment); *Obriecht v. Raemisch*, 517 F.3d 489, 493–94 (7th Cir. 2014) (explaining that a nonspecific motion for reconsideration based on a claimed error of law is treated as a motion under Rule 59(e), not Rule 60(b)). The second motion specifically requested relief from a final judgment under Rule 60(b). *See* FED. R. CIV. P. 60(b). The court denied both motions on February 29, 2012. On March 12 Taylor filed a third postjudgment motion, also under Rule 60(b), which included an affidavit and evidence documenting his attempt to file his response to the order to show cause on July 11. The district court denied that motion on March 18, and Taylor timely appealed the denials of all three postjudgment motions.

Taylor initially proceeded pro se on appeal, but we recruited pro bono counsel to assist him.[5] We asked the parties to address two questions: (1) the effect of Taylor's response to the show-cause order and Officer Brown's motion to dismiss; and (2) whether Taylor's response was timely under the prison mailbox rule.

## II. Discussion

Despite the complex procedural history, the resolution of this case is relatively straightforward. As both Taylor and Officer Brown argued in the district court, Taylor's response to the pre-severance show-cause order was timely under the

---

[5] The court thanks Barry Levenstam and Daniel T. Fenske of Jenner & Block LLP for their very capable pro bono representation of Taylor.

prison mailbox rule. Since Taylor accepted the court's pro-
posal that he voluntarily dismiss Count 3, the 631 Case
should never have come into existence, Taylor should not
have been assessed a second filing fee, his claim against
Officer Brown should not have been dismissed with preju-
dice, and he should not have been held liable for Brown's
litigation expenses. Taylor is entitled to unwind the clock.

### A. Jurisdiction

Before analyzing the prison mailbox rule, we must en-
sure that the issue falls within the scope of this appeal.
*Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir.
1999); 28 U.S.C. § 1291. Officer Brown argues that the issue is
out of bounds because the severance order was issued in the
104 Case, and this is an appeal of the final judgment in the
631 Case.

It's true that the severance order was initially entered in
the 104 Case—that was the only case in existence at the time,
after all—but it doesn't follow that we cannot review that
order in an appeal from the final judgment in the 631 Case.
A newly severed case does not spring into existence *ex nihilo*;
it's more like a fork in a stream, and events that occurred
pre-severance are logically common to both cases. It would
be counterintuitive to hold that Taylor could only appeal the
severance order from the "nonsevered" branch of the case
(the 104 Case), which proceeded apace unaffected in any
way by the severance, rather than the "severed" branch,
which owed its very existence to the order. An additional
concern is that the "nonsevered" branch of a case may be
resolved long before the "severed" branch, effectively

forcing parties to appeal a disputed severance preemptively. That result would strongly cut against the rationale for the final-judgment rule. *See Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 626 (7th Cir. 2003) ("[J]udicial economy is served by the consolidation of as many issues in a litigation as possible in a single appeal. That is why it is almost never mandatory to file an interlocutory appeal in order to preserve an issue for appellate review.").

We need not come to a definitive conclusion on the issue, however, because the judge expressly instructed the clerk to enter a copy of the severance order in the 631 Case docket. That makes it an interlocutory order in the 631 Case, and "an appeal from a final judgment brings up for review any interlocutory order that has not become moot." *Id.*

Officer Brown counters that "post-severance … suits are independent for purposes of appellate jurisdiction." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 444 (7th Cir. 2006). That's certainly true, but it's the severance order itself that's at issue here, not the post-severance proceedings in the 104 Case. In fact, the independence of severed cases eliminates the risk that the resolution of this appeal could disturb the finality of the 104 Case; any objections Taylor has to the court's handling of the 104 Case must be appealed from the final judgment in that case. In an appeal from the 631 Case, we can only review the final judgment in the 631 Case, including any interlocutory decisions that have merged with it.

Since Taylor's notice of appeal referred to the district court's denial of his Rule 59(e) motion, we have jurisdiction over the final judgment in the 631 Case. *See Kunik v. Racine County, Wis.*, 106 F.3d 168, 173 (7th Cir. 1997) ("[A]n appeal

from the denial of a Rule 59(e) motion [is] also sufficient to bring the underlying judgment before the appellate court." (citing *Foman v. Davis*, 371 U.S. 178 (1962))); *see also* FED. R. APP. P. 3(c). And because "the appeal from the final judgment in the action brings up all interlocutory rulings that preceded it," *Kunik*, 106 F.3d at 172, we also have jurisdiction to review the severance order.

**B. Voluntary Dismissal and Amended Pleadings**

Before we can understand the effect of Taylor's attempt to accept the magistrate judge's proposal in the show-cause order, we must be clear about exactly what that proposal was—or, rather, what it should have been. The order to show cause said that Taylor could "avoid the financial burden of a new filing fee by filing a motion to voluntarily dismiss Count 1 or Count 3." Taylor's response mirrored the magistrate judge's own language and asked to voluntarily dismiss the claim against Officer Brown. Although the court had the power to achieve its intended result—one claim dropped from the case while the other progressed—it used the wrong means.

Voluntary dismissal by court order under Rule 41(a)(2) allows the plaintiff to dismiss "an action" on "terms that the court considers proper." FED. R. CIV. P. 41(a)(2). Although some courts have held otherwise, we've said that Rule 41(a) "does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case." *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001); *see also Nelson v. Napolitano*, 657 F.3d 586, 588 (7th Cir. 2011) (noting that "the purpose of Rule 41(a)(1) is to

limit a plaintiff's ability to dismiss an action" (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990))). *Berthold Types* and *Nelson* both concerned Rule 41(a)(1)(A), which allows for voluntarily dismissal *without* a court order, rather than 41(a)(2), but *both* provisions refer exclusively to "actions"—which, as *Berthold Types* said, means the entire case.[6] Since "[w]e give the Federal Rules of Civil Procedure their plain meaning," *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989), Rule 41(a) should be limited to dismissal of an entire action.[7]

---

[6] We recognize that prior to *Berthold Types*, we were not always clear about whether Rule 41(a) could be used to dismiss individual claims. *See, e.g.*, *Baker v. Am.'s Mortg. Serv., Inc.*, 58 F.3d 321, 324 n.2 (7th Cir. 1995) (noting that this court has not yet defined the scope of Rule 41(a)(1)(A)(i) and assuming without deciding that a partial dismissal is acceptable); *Winterland Concessions Co. v. Smith*, 706 F.2d 793, 796 (7th Cir. 1983) (assuming arguendo that Rule 41(a) applies only to an entire action while noting that some courts had rejected that view). Other circuits appear divided. *Compare Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 719–20 (5th Cir. 2010) ("Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims," therefore, "[g]enerally, Rule 41(a)(1) dismissal results in immediate termination of the suit."), *with Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997) ("The plaintiff may dismiss some or all of the defendants, or some or all of his claims, through a Rule 41(a)(1) notice.").

[7] This interpretation is strengthened by the fact that Rule 41(b), which concerns *involuntary* dismissal, expressly provides that a defendant may move to dismiss "the action *or any claim* against it" for failure to prosecute or comply with a rule or order. FED. R. CIV. P. 41(b) (emphasis added). The fact that the drafters of the rules clearly included both "actions" and "claims" in Rule 41(b) but only mentioned "actions" in Rule 41(a) is a strong indication that they intended there to be a distinction between the two provisions.

Because the court offered Taylor the opportunity to dismiss the claim against Officer Brown in the 104 Case while pursuing the claim against the Count 1 defendants, Rule 41(a) was not the proper vehicle.[8] Instead, the court should have offered Taylor the opportunity to amend his pleadings under Rule 15(a). Like Rule 41(a), Rule 15(a) allows a plaintiff to amend his complaint—including by adding or dropping parties and claims—as a matter of right in some situations and by court order in others, and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

---

[8] Taylor suggests that we could have resolved his case under a different provision of Rule 41(a)—Rule 41(a)(1)(A), which permits parties to stipulate to the dismissal of an action without requiring leave of the court. His position is that both parties stipulated to the dismissal of the 631 Case as of the filing of Officer Brown's motion to dismiss. But while such a stipulation would have dismissed Taylor's claim against Officer Brown without prejudice, it would not have relieved Taylor from his obligation to pay the $350 filing fee. To voluntarily dismiss the 631 Case is to presume that it properly came into being, and if it properly came into being, then the filing fee is owed no matter when or how the case was resolved. *See* 28 U.S.C. 1914(a) ("The clerk ... shall require the parties instituting any civil action, ... whether by original process, removal *or otherwise*, to pay a filing fee of $350 ... ." (emphasis added)); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1078–79 (7th Cir. 1987) ("You can only get so far with the comparison [of a voluntary dismissal] to a suit never filed, however. Suppose the plaintiff files suit and pays the filing fee with a rubber check, then orders a transcript of some preliminary proceedings … and dismisses under Rule 41(a)(1)[A](i). Does the plaintiff avoid paying the docket fee and the court reporter on the ground that '[i]t is as if the suit had never been brought'? Neither filing fees nor reporters need be paid when suit is never filed, yet the plaintiff must pay up nonetheless."). A plaintiff does not have to pay the filing fee for a case that was wrongfully severed over his objection, however.

Accordingly, we construe Taylor's response to the show-cause order as a motion to amend his complaint under Rule 15(a)(2) rather than as a motion to voluntarily dismiss an action under Rule 41(a). *See McGee v. Bartow*, 593 F.3d 556, 565 (7th Cir. 2010) (filings by pro se litigants are to be construed liberally). But for consistency's sake, we will continue to refer to Taylor's attempt to drop his claim against Officer Brown as an attempt at voluntary dismissal.[9]

### C. The Prison Mailbox Rule

The magistrate judge's show-cause order gave Taylor a straightforward choice: voluntarily dismiss one of the misjoined claims and avoid a filing fee, or do nothing and the claims would be severed and a new filing fee imposed. The judge severed the claims only after finding that "[n]o objections are on file." Therefore, the key question is whether Taylor's response to the show-cause order was timely in light of the prison mailbox rule.

"The prison mailbox rule … provides that a prisoner's notice of appeal is deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." *Hurlow v. United States*, 726 F.3d 958, 962 (7th Cir. 2013). The rule is justified because "the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot

---

[9] The parties indicated that it's common practice in some district courts in this circuit to allow the voluntary dismissal of individual claims under Rule 41(a). If that is true, we remind judges to use Rule 15(a) instead.

control or supervise and who may have every incentive to delay." *Houston v. Lack*, 487 U.S. 266, 271 (1988); *see also Ray v. Clements*, 700 F.3d 993, 1002–03 (7th Cir. 2012). Although the prison mailbox rule was first applied to notices of appeal, *see Houston*, 487 U.S. at 276, the rule applies to all district-court filings save for "exceptional situation[s]," *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (per curiam). S*ee, e.g.*, *Ray*, 700 F.3d at 1004 (applying the prison mailbox rule to petitions for state postconviction relief unless state law clearly rejects it); *Edwards*, 266 F.3d at 756 (Rule 59(e) motions); *Jones v. Bertrand*, 171 F.3d 499, 501 (7th Cir. 1999) (petitions for federal writs of habeas corpus).

We have not yet had occasion to apply the prison mailbox rule to documents that are e-filed by prison staff rather than sent through the prison mailroom. However, pro se prisoners are no more able to guarantee that properly tendered documents are e-filed than that they're mailed. Accordingly, we conclude that a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies, regardless of whether they are ultimately mailed or uploaded.[10]

---

[10] Some minor adaptations to current doctrine might be required for e-filing. For example, Rule 4(c) of the Federal Rules of Appellate Procedure requires that to qualify for the prison mailbox rule, a prisoner must submit a sworn affidavit stating that first-class postage has been prepaid, which is obviously not applicable when e-filing.

**D. Severance Order**

We review a court's decision to sever claims for abuse of discretion. *Gaffney*, 451 F.3d at 442; *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). The same standard of review applies to the denial of a Rule 15(a) motion to amend—which, as we've said, is the procedural device the magistrate judge should have proposed and how Taylor's response to the show-cause order should have been construed. *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014). If Taylor timely complied with the judge's explicit instructions on how to dismiss his claim against Officer Brown and thereby avoid severance, it certainly would have been an abuse of discretion to ignore his motion for voluntary dismissal of Count 3 and sever the claims anyway.

We note, of course, that when the judge found that "[n]o objections are on file" and issued the severance order, he did not know that Taylor had attempted to file his response on July 11, two days before the deadline. So the initial severance order was not an abuse of discretion. However, the prison mailbox rule requires that courts reassess their orders once the rule has been invoked. In this case, the judge not only failed to reassess whether the severance was proper, he never acknowledged that the prison mailbox rule was in play—even after both parties brought the rule to his attention.

Officer Brown first referred to the prison mailbox rule in his August 18 motion to dismiss. Taylor's subsequent filings provided detailed narratives of his attempts to file his response to the show-cause order. And although Taylor didn't reference the prison mailbox rule by name, he clearly invoked the principle when he asked the court to "accept the

[p]laintiff's argument and the State's Attorney['s] argument that the [p]laintiff has absolutely no control on when outgoing mail goes out." The relief he sought aligned exactly with that which Officer Brown had himself requested: "The [p]laintiff is asking that since the [p]laintiff is voluntarily requesting the [c]ourt to dismiss Count III that no further charges be [assessed] to the [p]laintiff's account."

Likewise, in his August 29 response to the court's order instructing him to pay the filing fee, Taylor reiterated that he "had absolutely no control of the Motion to Dismiss being electronically sent to the court" and asked the court to "rule favorably on the Motion to Dismiss."[11]

Despite the fact that the prison mailbox rule lay at the heart of Officer Brown's motion to dismiss and Taylor's responses, the district judge never mentioned the rule in his order denying the motion to dismiss (which also denied Taylor's motions as "moot"). Rather, the court characterized Officer Brown's argument as merely advancing the theory that "this case should be dismissed because Taylor agreed to the severance of Count III of his complaint in [the 104 Case] only reluctantly." That understanding of the facts was clearly faulty. In his response to the show-cause order, Taylor didn't reluctantly agree to *sever* Count 3—he

---

[11] There's a minor ambiguity regarding whether Taylor's request that the court "rule favorably on the Motion to Dismiss" referred to Officer Brown's motion to dismiss or to his own response to the show-cause order, which Taylor had referred to as a motion to dismiss earlier in the document. But Officer Brown's motion to dismiss argued that the court should give effect to Taylor's response to the show-cause order, so the relief that Taylor was requesting was the same under either interpretation.

reluctantly agreed to *voluntarily dismiss* Count 3. The judge's misunderstanding of Taylor's wishes was compounded by his misapprehension that Taylor had already applied to proceed IFP in the 631 Case. If that were true, it would certainly have been a strong indication that Taylor wanted his suit against Officer Brown to survive. But, of course, it wasn't true. The judge issued a clarification order the next day but never reexamined the implications of his mistaken assumption, nor did he confront Taylor's multiple filings requesting the voluntary dismissal of his claim against Officer Brown in accord with the proposal made by the magistrate judge in the show-cause order.

In sum, the court overlooked the prison mailbox rule throughout the course of this litigation even though both parties agreed that the rule applied, making Taylor's motion to voluntarily dismiss timely and thus averting the sever-ance. By denying, *sub silentio*, Taylor's motion to dismiss Count 3 and instead severing that count to create the 631 Case, the court abused its discretion.

When a court overlooks the prison mailbox rule, it's often necessary to remand for additional fact-finding to ensure that the filing was, in fact, timely under the rule. But Officer Brown conceded below that Taylor qualified for the prison mailbox rule, so he's waived any argument on appeal that Taylor did not qualify. *See Hale v. Chu*, 614 F.3d 741, 744 (7th Cir. 2010) ("It is well-established that a party waives the right to argue an issue on appeal if he fails to raise that issue before the district court."). In situations where the rule serves to give a court jurisdiction over a matter that would otherwise be time-barred, the court has an independent duty to ensure that the prisoner actually sent his mail when he

says he did—the opposing party's waiver may not be enough. In those cases, prisoners are often required to submit a notarized affidavit attesting to the circumstances of the filing, *see, e.g.*, FED. R. APP. P. 4(c), and sometimes additional documentary or testimonial evidence is required, *see Ray*, 700 F.3d at 1011–12.

Here, Taylor provided both a sworn affidavit and documentary evidence in his second Rule 60(b) motion. Ordinarily, the basis for a successive Rule 60(b) motion must not have been available when the first one was filed, *see Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), but here "the district court did not provide the appellant with an opportunity to prove that his [late-received documents] were filed in a timely manner," *Thompson v. Rasberry*, 993 F.2d 513, 515 (5th Cir. 1993) (per curiam). *See also Grady v. United States*, 269 F.3d 913, 918 (8th Cir. 2001) ("[T]he prisoner must *at some point* attest to [the date of the filing] in an affidavit or notarized statement." (emphasis added)). In a case like this in which a *nonjurisdictional* deadline was at stake *and* the opposing party conceded below that the mailbox rule applies *and* there is an affidavit from the prisoner in the record, we see no reason to remand for additional fact-finding.

Accordingly, we VACATE the order dismissing the 631 Case with prejudice and taxing Officer Brown's costs against Taylor. We REMAND for further proceedings consistent with this opinion, including the reimbursement of any fees Taylor has paid toward the 631 Case filing fee or toward Brown's litigation expenses.