In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――――

No. 21-1320

TERRANCE PRUDE,

*Plaintiff-Appellant,*

*v.*

ANTHONY MELI and GARY BOUGHTON,

*Defendants-Appellees.*

―――――――――――――

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 17-cv-336 — **Stephen L. Crocker**, *Magistrate Judge.*

―――――――――――――

ARGUED APRIL 11, 2023 — DECIDED AUGUST 7, 2023

―――――――――――――

Before SCUDDER, ST. EVE, and LEE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Terrance Prude helped a friend and
fellow inmate file a successful civil rights lawsuit against their
Wisconsin prison. According to Prude, his friend, grateful for
the help, sent him $10,000 of his damages award to help Prude
retain an attorney for his own criminal appeal. But to the
prison's Security Director, Anthony Meli, the check did not
look like a token of appreciation; it looked like the product of
an illegal business arrangement. Meli seized the funds as

contraband and launched an investigation, after which he charged Prude with various violations of the Wisconsin Administrative Code, including lying, unauthorized use of the mail, threats, and enterprises and fraud. Prude had a disciplinary hearing on the charges and was found guilty. As part of his punishment, the $10,000 was permanently seized.

Prude contends that the money was not contraband and that his hearing was a sham, in violation of his due process rights. Although Meli was an investigating officer who should have recused himself from the hearing process, Prude claims he did just the opposite, controlling every step of the hearing and directing the actions of the hearing officer, Jeremy Westra, to ensure a finding of guilt and to prevent Prude from ever getting his money. Despite statements from Meli and Westra before and during the hearing suggesting a predetermined outcome, the district court dismissed the claims against Westra at the screening stage and later granted summary judgment in favor of Meli on all remaining claims. Because the evidence in the record plausibly supports a due process violation, we reverse.

## I. Background

### A. Factual Background

#### 1. The Disputed Funds

Terrance Prude is serving an eighty-year sentence at Waupun Correctional Institution ("WCI"). According to his complaint, Prude used his skills as a jailhouse lawyer to help a longtime friend and fellow inmate file a successful civil rights lawsuit against WCI. The friend was eventually able to secure representation by a licensed attorney, Brent Nistler, for the case.

Nistler won the lawsuit to the tune of a $40,000 damages award. Prude claims that his friend was so happy with the result and with their lifelong friendship that he used $10,000 of his damages award to retain Nistler to argue Prude's criminal appeal. But Prude did not want Nistler as his attorney—he wanted another criminal defense attorney, Robert Meyeroff, to represent him. Prude says that he had Nistler send him the $10,000 directly so that he could retain counsel of his choice. That meant that Nistler sent a $10,000 check to Prude's prison account.

That $10,000 check raised suspicions for WCI Security Director Anthony Meli. Because of Prude's suspected gang membership, Meli had been monitoring Prude's non-legal mail and discovered the $10,000 check from Nistler to Prude. Meli suspected that the check was part of an improper business arrangement between Nistler and Prude. Based on these suspicions, Meli seized the $10,000 as contraband before it was deposited in Prude's account. He later interviewed Prude about the check and opened an investigation. During the interview, the discussion became heated and Prude threatened Meli. Meli ultimately charged Prude with lying, threats, enterprises and fraud, and unauthorized use of the mail. Prude admitted to threatening Meli and to the unauthorized use of the mail but maintained that he was not guilty of lying or enterprises and fraud. Most importantly, he insisted that the $10,000 was a legal gift, wholly unrelated to any alleged prison violation.

### 2. Pre-Hearing Allegations

Prior to a hearing on these charges, Prude and Meli spoke multiple times. During an interview in December 2016, Prude claims that Meli said "he would make sure [Prude's] funds

are put in the state general fund" and told Prude to "forget about the funds because you won't get it back." Meli also allegedly "guarantee[d] that the hearing officer wo[uld]n't return the funds to [Prude] or the lawyer who mailed it." About a month later, Prude claims that Meli offered him what is called an "undisputed disposition"—essentially, a plea bargain for prison violations and punishments. Meli said that if Prude pleaded guilty, he would be sentenced to 180 days in disciplinary separation and the $10,000 would be permanently seized. Prude turned him down, opting instead for a hearing on the charges.

In preparation for the hearing, Prude sought to call witnesses and submit evidence in his own defense. In January 2017, he sent an "Interview/Information Request" form to Nicole Kamphuis, a member of the prison's Business Office who had initially informed him that the funds from his $10,000 check were on hold. He asked her, "Is it true that Meli authorized my funds to be put in the state general fund regardless of what Westra decides at the disciplinary hearing (yes or no answer requested only)?" Kamphuis apparently responded, "Yes," and signed the document.

On January 25, 2017, Prude also submitted a similar request form to Meli himself. Prude asked Meli several questions: First, "Can you submit the Meyeroff letter to the [hearing officer] that I gave you?" This was a reference to Prude's claim that he had given Meli a letter from Meyeroff, which would allegedly show that the $10,000 was payment to retain counsel for his appeal. Next, Prude asked, "Can I submit a written statement at the due process hearing I have coming up?" Prude added, "I also have evidence that proves that you misrepresented the facts in your [conduct report]. … Please

respond." Meli answered this request on February 1, 2017, stating simply, "No—you can't present your evidence/statement at the hearing. Consistent with policy." Meli offered no further explanation, but now contends that he never received a letter from Prude and, if he had, he would not have withheld it. Meli did not address the other evidence Prude claimed to have.

### 3. The Hearing and the Decision

The hearing on these charges occurred the day after Meli told Prude he could not submit any evidence. The hearing officer was Captain Jeremy Westra. According to Prude, Westra and Meli share an office and Meli is Westra's supervisor. He claims that Meli, despite being the investigating officer on the case, sat at the hearing officer's table with Westra. He alleges that Westra took cues from Meli, even though Westra was nominally the hearing officer. Prude alleges, for example, that Westra asked Meli if he would like to read the Conduct Report to start the hearing, but Meli allowed Westra to read it instead. Further, Prude contends that Westra started the hearing by saying, "You know my hands are tied on the 180 [days of disciplinary separation] and seized $10,000 that I have to give you"—the same punishment Meli had offered Prude weeks earlier. As Westra said this, Meli allegedly sat beside him and smiled. Then, *after* Westra had proclaimed his "hands were tied" as to punishment, Westra started the hearing on Prude's guilt.

At the close of the hearing, Westra found Prude guilty of the charges. Westra then allegedly said, "you really must've pissed Meli off. You already know what the sentence is which is the same sentence Meli offered you," and then ordered 180 days in disciplinary separation and seizure of the $10,000.

### B. Procedural History

Prude filed a complaint on May 5, 2017, alleging violations of his due process rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.[1] In his initial complaint, Prude alleged that Meli had withheld evidence and acted as a biased decisionmaker by denying Prude's right to present evidence at the hearing. He also detailed Westra's "errors" throughout the process.[2]

At the screening stage, the court dismissed the majority of Prude's due process claims but allowed Prude to proceed against Meli on his claim that Meli had violated Prude's due process rights by denying him the right to present evidence at the hearing. Then, finding that no allegations suggested that Westra himself was a biased adjudicator, the court dismissed Westra as a defendant.

After partial discovery on the surviving claims, the court permitted Prude to amend his complaint to include allegations that Meli was improperly involved with the hearing and colluded with Westra to predetermine Prude's guilt and punishment.

Less than three weeks later, Prude filed a motion to reinstate Westra as a defendant based on these new allegations. The court denied the motion on the grounds that it was untimely and would "unfairly prejudice [the] defendants." The

---

[1] Prude named WCI's warden, Gary Boughton, as a defendant only in his official capacity seeking injunctive relief in the event that he prevails against Meli.

[2] By consent of both parties, the case proceeded before a magistrate judge.

court further held that the allegations in the complaint did not state a claim against Westra because, "viewed in a light most favorable to Prude, [the new allegations] suggest that Westra merely followed Meli's orders, not that he acted out of bias against Prude."

Turning to the cross-motions for summary judgment, the court found that the information request from Kamphuis, and Westra's statements before and after the disciplinary hearing, were inadmissible hearsay and could not be considered at summary judgment. Even if it considered this evidence, the court held that it would still grant summary judgment in favor of Meli because Prude failed to identify what the evidence would have showed or how it would have affected the outcome, and further, none of the evidence available supported a reasonable inference that "Meli inappropriately influenced how Westra would resolve the charges in the conduct report." According to the court, "[t]he most reasonable inference to draw from Westra's decision to impose the same punishment … is that Westra found it to be an appropriate punishment and … felt bound by policy to direct the money into the state general fund."

The court also found the pre-hearing statements from Meli and Westra similarly benign: "Meli's assertion [that Prude would not get the money back] suggest[s] that he was confident in the charges lodged against Prude, not that he was orchestrating the outcome of the disciplinary hearing"; and in the absence of any incriminating communications between Meli and Westra, "the only reasonable inference to be drawn is that Westra felt his 'hands were tied' because he had reviewed the charges and knew he would have to confiscate the

funds, not that Meli told him to find Prude guilty and to impose a specific punishment." This appeal followed.

## II. Analysis

Prude alleges that his due process rights were violated at three separate times because Meli (1) confiscated his $10,000 check without a hearing, (2) prevented him from presenting any evidence at the subsequent disciplinary hearing, and (3) conspired with Westra to subject him to a biased tribunal. We review each of these claims de novo. The court decided the first two claims at screening, thus, we take all facts alleged in the complaint as true and make all reasonable inferences in Prude's favor. *Schillinger v. Kiley*, 954 F.3d 990, 993–94 (7th Cir. 2020). The court rejected the third claim at summary judgment, so we construe all facts and draw reasonable inferences in favor of Prude. *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (citation omitted).

### A. Due Process Claims Against Meli

"A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). First, a prisoner must show that "he has a liberty or property interest that the state has interfered with." *Id.* Meli has conceded this element for the purposes of appeal.[3] After clearing this hurdle, a

---

[3] On appeal, Meli argues that Prude does not have a protected property interest in the $10,000. At the screening stage, however, the district court found that "Prude's $10,000 qualifies as a deprivation of a property interest." Prude relied on this ruling at summary judgment, and Meli did not contest this finding. Any argument that Prude lacks a protected property interest is thus waived for the purposes of this appeal. *Taylor v. Brown*, 787 F.3d 851, 860 (7th Cir. 2015).

prisoner must show that "the procedures he was afforded upon that deprivation were constitutionally deficient." *Id*.

It is well-settled that due process in a prison disciplinary hearing requires advance notice of the charges, a hearing before an impartial decisionmaker, the right to call witnesses and present evidence (when consistent with institutional safety), and a written explanation of the outcome.[4] *Id*. At the same time, these procedural requirements are not overly rigid. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Any procedures required in a prison "must balance the inmate's interest in avoiding loss … against the needs of the prison, and some amount of flexibility and accommodation is required." *Wolff*, 418 U.S. at 566. Because of the unique issues present in the prison context and the need to maintain safety and order, "[r]ules of procedure may be shaped by consideration of the risks of error and should also be shaped by the consequences which will follow their adoption." *Id.* at 567 (citations omitted).

---

[4] Defendants contend that this standard applies only to deprivations of liberty, not deprivations of property. But neither our case law nor the Supreme Court case on which it relies, *Wolff v. McDonnell*, draws such a distinction. In fact, *Wolff*, which developed the constitutional procedural requirements for prison disciplinary proceedings, explicitly equated the process required to protect a prisoner's liberty interest to property interest protections. 418 U.S. 539, 557 (1974) ("This analysis as to liberty parallels the accepted due process analysis as to property."); *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 172 (3d Cir. 2011) (rejecting a nearly identical argument).

### 1. Impartial Decisionmaker

The crux of Prude's due process claim is that he was deprived of his right to an impartial decisionmaker.[5]

---

[5] Meli claims that, because his "alleged actions in depriving Prude of a neutral decisionmaker would have been 'random and unauthorized,'" due process only requires adequate post-deprivation remedies under state law. *See Parratt v. Taylor*, 451 U.S. 527, 541–43 (1981). Meli waived this argument on appeal by failing to raise it below. *Henry v. Hulett*, 969 F.3d 769, 787 (7th Cir. 2020) (en banc). But even if we were to consider it, the argument would fail.

> First, the *Parratt* doctrine does not apply to claims alleging that wrongful conduct corrupted fair fact-finding in the criminal justice system. No court has suggested as much. [Prude's] claims seek to vindicate rights of fundamental fairness and thus differ in kind from procedural due process claims governed by *Parratt*, which seek only notice and a hearing before a deprivation occurs. Second, the defendants' broad reading of *Parratt* cannot stand in light of later limiting cases. Those cases have made clear that *Parratt* is limited to a narrow category of due process cases where the plaintiff claims he was denied a meaningful pre-deprivation hearing, but under circumstances where the very notion of a pre-deprivation hearing would be impractical and even nonsensical, and where the deprivation was not carried out through established state procedures.

*Armstrong v. Daily*, 786 F.3d 529, 539 (7th Cir. 2015). Here, the deprivation was not the product of an unpredictable act like that in *Parratt* and was conducted pursuant to established state procedures. *See* Wis. Admin. Code § 303.09(1) ("Any employee who believes that an item is contraband may seize the item."). Because "'the property deprivation is effected pursuant to an established state procedure,' *Parratt* is irrelevant." *Bradley v. Village of University Park*, 929 F.3d 875, 887 (7th Cir. 2019) (quoting *Hudson v. Palmer*, 468 U.S. 517, 534 (1984)). Accordingly, Meli's claim that his own bias when enforcing state law shields him from federal due process claims fails.

"Adjudicators enjoy a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Zimmerman v. Hanks*, 248 F.3d 1162 (7th Cir. 2000) (table) (citation omitted); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). But this presumption has its limits—"[i]f an officer is substantially involved in the investigation of the charges against an inmate, due process forbids that officer from serving on the adjustment committee." *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (citation omitted); *see Piggie*, 342 F.3d at 667. At the other end of the spectrum, an officer who signs off on investigatory forms only in a supervisory capacity is not involved enough in the investigation to require recusal from the hearing process. *Whitford*, 63 F.3d at 534. We judge factual allegations of bias along this spectrum of involvement to determine whether a decisionmaker was impartial in compliance with due process.

Under these standards, Prude's impartial decisionmaker claim raises issues of fact that should have survived summary judgment. An impartial officer substantially involved in the investigation of an offense cannot decide the outcome of a hearing. *Id*. And an investigator cannot circumvent this requirement of due process by placing a puppet in the adjudicator's seat and pulling the strings to control the decision. Here, significant evidence in the record permitted a reasonable inference that Meli, the investigating officer, conspired with or controlled Westra to predetermine the hearing outcome. The district court erred here by drawing inferences in Meli's favor to hold otherwise.

First, it is undisputed that, despite having previously been warned against doing so, Meli decided what evidence Prude could submit at his hearing. While this is not enough to

constitute a due process violation on its own, it does reflect Meli's involvement in Prude's hearing. Just as in *Whitford*, Meli prepared the investigative report against Prude and then performed a role traditionally associated with the decisionmaker: deciding what evidence Prude could present. *Id.* Moreover, Meli did so without any explanation or investigation into what evidence Prude sought to present—this, too, plausibly suggests biased judgement rather than an impartiality.

Second, Meli's alleged statements to Prude about the inevitable outcome of the hearing support an inference that Meli controlled the hearing result. Prude alleged that Meli told him—prior to the disciplinary hearing—that the $10,000 would not be returned to Prude no matter what happened during the hearing. The district court thought little of these statements, suggesting that "Meli … may have done so thinking it would have elicited a confession from Prude … [or] that he was confident in the charges he lodged against Prude[.]" While these explanations may be plausible, it is also plausible that when Meli stated that the outcome of the disciplinary hearing was preordained, he meant exactly that—that he already knew the outcome of the hearing and that it would be decided against Prude.

The inference that Meli predetermined the outcome is all the more reasonable when we consider Westra's alleged statements before and after the hearing.[6] Prude testified that, before any evidence had been presented, Westra stated, "you

---

[6] As addressed below, the district court improperly held that Westra's statements were inadmissible hearsay. We consider them here, as the district court should have in its summary judgment analysis.

know my hands are tied on the 180 [days of disciplinary separation] and seized $10,000 that I have to give you," while Meli sat next to Westra and smiled. According to Prude, this was the same punishment proposed by Meli in the uncontested disposition offer. And at the conclusion of the hearing, Westra did, in fact, order that exact punishment. Prude also alleges that Westra said, "you really must've pissed Meli off," prior to delivering his verdict. While traditionally these statements may be insufficient, when viewed collectively, and given Meli's position of power over Westra as a supervisor, they give rise to a reasonable inference that Westra was acting at Meli's direction.

Although the district court noted the lack of direct evidence of any communications between Westra and Meli about Prude's hearing, in cases dealing with discrimination in the employment context, we have explained that such smoking gun evidence is uncommon; "[t]he far more common case relies on circumstantial evidence, which allows the trier of fact to infer intentional discrimination by the decisionmaker." *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013) (citations and internal quotation marks omitted). Similarly, in the prison disciplinary hearing context where prisoners' access to different spaces is severely restricted, it is not surprising that Prude does not have direct evidence of private communications between conspiring guards.

Because evidence in the record, when viewed together and in the light most favorable to Prude, plausibly supports the inference that Meli's interference in Prude's hearing violated

his right to an impartial decisionmaker, we reverse the grant of summary judgment on this claim.[7]

## 2. Qualified Immunity

The district court held in the alternative that Meli was entitled to qualified immunity on any due process claims. This too was an error.

"Qualified immunity requires a two-part inquiry: we must determine (1) whether facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). We have already explained that Prude's evidence at summary judgment satisfies the first prong of this test. We now focus on whether the right to an unbiased decisionmaker was clearly established.

"Th[e] inquiry [into whether a constitutional right is clearly established] must be undertaken in light of the specific

---

[7] Prude also alleges that Meli violated his due process rights by prohibiting him from presenting evidence, such as his letter from Meyeroff, at the hearing. *See Piggie*, 344 F.3d at 678 ("[A]n inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns."). Any error was harmless, however, because Prude fails to explain why the evidence would have altered the outcome. *See id.* (finding any error harmless because, "even if this factual dispute were to be resolved in Piggie's favor, we are unable to see how Piggie was harmed by the screening officer's alleged conduct"). Prude bears the burden of showing prejudice at his hearing, *Vaughn v. Willis*, 853 F.2d 1372, 1376 (7th Cir. 1988), and so his failure to explain how any of the requested evidence would have helped him is fatal to this claim.

context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (cleaned up). "A right is clearly established when it is defined clearly enough to put officers on notice of their duties under the circumstances they confront. … This does not require a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Est. of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017) (cleaned up). In Meli's case, the question is therefore whether it was "beyond debate" that an investigating officer cannot conspire with or control a hearing officer to directly determine the outcome of a disciplinary hearing.

The answer is a straightforward yes. If the Fifth and Fourteenth Amendment protections of due process mean anything, they mean a right to a fair, impartial decisionmaker. *See Republican Party v. White*, 536 U.S. 765, 814 (2002) (noting the impartiality requirement is "jealously guarded" to "ensure[] that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)). No reasonable official could believe that predetermining the outcome of a disciplinary hearing—no matter how that is accomplished—is consistent with due process. *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (explaining that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question" (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

**B. Prude's Motion to Amend and Reinstate Westra**

The district court also erred in denying Prude's motion to amend his complaint and reinstate Westra as a defendant. The

district court held that the complaint did not plausibly state a claim against Westra and that it was untimely.

"Rule 15(a) provides that a court 'should freely give leave [to amend] when justice so requires.'" *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 529 (7th Cir. 2022) (quoting Fed. R. Civ. P. 15(a)). We review a district court's decision to deny a motion to amend for abuse of discretion. *Id.* at 528.

The district court abused its discretion by holding that the new allegations "suggest that Westra merely followed Meli's orders, not that he acted out of bias against Prude." As outlined above, our case law does not require that a decisionmaker have personal animus against a prisoner to violate his right to due process. Rather, his due process rights are violated when he is denied an *impartial* decisionmaker. *See Scruggs*, 485 F.3d at 939; *Wolff*, 418 U.S. at 563–71. If, as Prude's complaint alleged, Meli and Westra "worked together … in issuing a punishment" against him; Westra's actions were "already la[i]d out by" Meli prior to the hearing; and Westra was "following orders" to find Prude guilty and give him a particular punishment; then Westra was not impartial.

Further, the district court allowed Prude to amend his complaint to include allegations about a conspiracy between Meli and Westra to predetermine his guilt less than three weeks before Prude sought to include the same claim against Westra. The district court found no prejudice when it permitted essentially the same claim to proceed against Meli, and the court provides no explanation for how this three-week delay prejudiced Westra or Meli. So, this Court has no way of reviewing the district court's denial because we do not know what prejudice it expected, how, or to whom. *See United States*

*v. Marion*, 590 F.3d 475, 478 (7th Cir. 2009) ("Some minimal explanation is required.").

Prude's motion to amend his complaint and reinstate Westra as a defendant was both based on a plausible denial of his right to due process and timely. We now reinstate the claims against Westra and remand for appropriate discovery.

## C. Evidence Considered by the District Court

Finally, Prude contends that the district court erred in refusing to consider Westra's and Kamphuis's statements as inadmissible hearsay. "To be considered on summary judgment, evidence must be admissible at trial, …. If the evidence is inadmissible hearsay, the courts may not consider it. And when a document contains multiple layers of hearsay, … each layer must be admissible." *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (cleaned up). "We review the district court's evidentiary rulings for abuse of discretion." *Davies v. Benbenek*, 836 F.3d 887, 889 (7th Cir. 2016).

### 1. Westra's Hearing Statements

The district court refused to consider several of Westra's alleged statements. These included both statements before the hearing ("you know my hands are tied on the 180 day [disciplinary separation] and seized $10,000 that I have to give you") and after the hearing ("you really must've pissed Meli off. You already know what the sentence is which is the same sentence Meli offered you").

The court reasoned that these statements were "inadmissible hearsay, since Westra is not a party to this lawsuit and he was not Meli's agent." But if the district court had not abused its discretion in denying Prude's motion to reinstate

Westra, Westra would have been a defendant and his statements would have been admissible under Rule 801(d)(2)(A).

Westra's statement are also admissible because they are not being introduced to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2) (noting an out-of-court statement constitutes hearsay only when it is offered into evidence "to prove the truth of the matter asserted in the statement."). Westra's statements were not offered to prove that his "hands were tied," that Prude must have really "pissed Meli off" or that Prude "already kn[ew]" what sentence Westra would give him. Rather, they were offered to show Westra's belief that the outcome of the hearing was set, even before any evidence had been presented. *See Cairel*, 821 F.3d at 830 ("[T]hose statements were not hearsay because they were not offered to prove that they were true."). The court abused its discretion by excluding Westra's statements.

### 2. Kamphuis's Written Statements

The district court did, however, correctly exclude as hearsay the document allegedly filled out by Kamphuis. Prude submitted a request form to Kamphuis with questions about Meli's pre-hearing statements. In relevant part, he asked, "Is it true that Meli authorized my funds to be put in the state general fund regardless of what Westra decides at the disciplinary hearing (yes or no answer requested only)?" Kamphuis apparently responded, "Yes," and signed the document. This includes two layers of potential hearsay, the statement by Meli to Kamphuis and her relay of that statement to Prude. Each layer must be analyzed before the document can be admitted. *Cairel*, 821 F.3d at 830.

Meli's statement to Kamphuis is from a party opponent and is being offered against him. Under Rule 801(d)(2)(A), his statements are not hearsay. Kamphuis's relaying of that statement, however, poses a problem for Prude. Kamphuis is not a party to this suit and her statements are only relevant if they are true, which makes them inadmissible hearsay. Although Prude tries to shoehorn her statements into two separate hearsay exceptions, neither fits the bill.

Prude initially argues that Kamphuis's statement "facially appears to be a statement by a public office setting out the activities of that office." *See* Fed. R. Evid. 803(8). But Prude fails to explain—to this Court or the court below—how or why her statements fall within that exception. It was not an abuse of discretion to reject this argument.

Prude then contends that the catch-all "residual exception" under Rule 807 applies to Kamphuis's statements. An exception to the bar on hearsay, Rule 807 "provides that a sufficiently trustworthy hearsay statement is admissible if 'it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 233 (7th Cir. 2021) (quoting Fed. R. Evid. 807(a)). "We construe the Rule 807 requirements narrowly." *Id.* (citing *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019)). Here, Prude offered Kamphuis's statement to prove that Meli had predetermined Prude's sentence. That is exactly what Meli himself allegedly told Prude—and those statements were already in the summary judgment record. Accordingly, the Kamphuis letter is not "more probative" on this point than other available evidence, and the district court did not abuse its broad discretion in refusing to consider it.

### III. Conclusion

For the foregoing reasons, the district court's judgment is

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.